## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ALL-CLAD METALCRAFTERS, LLC, COOKWARE MARKETING AND SALES PRACTICES LITIGATION | MDL No. 2988<br>Master Case No. 2:21-mc-491-NR |
| This Document Relates to All Actions | *Electronically Filed* |

**PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM OF LAW IN SUPPORT OF FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs respectfully move, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for preliminary approval of a proposed Settlement with All-Clad Metalcrafters, LLC and Groupe SEB USA, Inc. ("Defendants" or "All-Clad"), preliminary certification of the Settlement Class defined in the Settlement Agreement, and approval of the proposed notice to the Settlement Class.[1] This Settlement, reached after substantial expert investigation, active litigation, and lengthy and hard-fought negotiations in this Multidistrict Litigation ("MDL"), will resolve all of Plaintiffs' and Settlement Class Members' claims against Defendants in the above-captioned action and the related litigation on a nationwide basis.

## I.      INTRODUCTION

Plaintiffs Jean Greeff, Carol Egidio, Beira Montalvo, Miranda Murray, and Brandi Milford ("Plaintiffs" or "Class Representatives"), individually and on behalf of all others similarly situated, and Defendants have entered into a Class Action Settlement Agreement to resolve Plaintiffs' claims that multi-ply cookware within All-Clad's D3, D5, and LTD Stainless Steel Collections

---

[1] The Settlement Agreement and its Exhibits are attached as Exhibit 1.  Capitalized terms not defined in this brief shall have the same definitions and meanings ascribed to them in the Settlement Agreement.

(the "Cookware"), has been misrepresented to be "dishwasher safe." Specifically, All-Clad marketed, labeled, and represented the Cookware as being, among other things, conveniently "dishwasher safe," and distributed it as such throughout the country to thousands of consumers. However, despite these representations, Plaintiffs alleged consumers discovered that the Cookware began to prematurely fail as the edges became thin and/or sharp over time, and ultimately, too sharp to continue safely using (the "Damaged Cookware"). The underlying Complaints asserted that extensive expert investigations revealed that the Cookware suffers from a design defect that when cleaned in a dishwasher allows the layers of aluminum in the Cookware to deteriorate or erode, leaving thin and/or sharp stainless steel edges, particularly along the rim of the Cookware ("Sharp Edges" or "Defect").

For their part, Defendants maintain they produce quality consumer products, including the Cookware. Accordingly, Defendants deny Plaintiffs' allegations in this litigation.

Notwithstanding the Parties' disagreement regarding the substantive allegations, they have been able to resolve this action. The final Settlement being presented is the result of four class actions filed, transfer and consolidation by the Judicial Panel on Multidistrict Litigation ("JPML"), hard-fought litigation of more than two years, and lengthy settlement negotiations that actively spanned over almost the entirety of the litigation. Accordingly, Plaintiffs respectfully submit this Unopposed Motion And Memorandum of Law In Support of For Preliminary Approval of Class Action Settlement, in support of their request for the entry of an order that will: (1) grant Preliminary Approval of the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure; (3) appoint Plaintiffs Greeff, Egidio, Montalvo, Murray, and Milford as Class Representatives; (4) approve the Notice Plan set forth in the Agreement and the accompanying declaration of the

Settlement Administrator, and approve the form and content of the Notices; (5) approve and order the opt-out and objection procedures set forth in the Agreement; (6) stay all deadlines in this litigation pending Final Approval of the Settlement; (7) appoint as Class Counsel Plaintiffs' attorneys and their law firm; and (8) schedule a Final Approval Hearing.

The Court should respectfully grant Preliminary Approval because the Settlement provides substantial relief for the Settlement Class, including multiple options for relief, and the terms of the Settlement are well within the range of reasonableness and consistent with applicable case law. Indeed, given the significant risks inherent in this litigation, the Settlement is an outstanding result for the Settlement Class. The Settlement satisfies all Third Circuit criteria for settlement approval. The proposed Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class Members. It provides substantial and immediate benefits to Settlement Class Members, including a common fund of up to $4,000,000.00 to fund claims ("Common Fund"), which will not be reduced by notice and administration costs, service awards for class representatives, or attorneys' fees.

As described in further detail below, there are three Options for Settlement Class Members to claim benefits for the return of Damaged Cookware, and an additional benefit for Settlement Class Members whose Cookware has not been damaged or who no longer have the Cookware to confirm it experienced the sharp edges. The Settlement Class Members with Damaged Cookware that has experienced "Sharp Edges" have three options for each piece of Cookware: (1) exchange of Damaged Cookware for the same type of D3/D5 Cookware, plus $75.00; (2) exchange of Damaged Cookware for dishwasher safe cookware sets from All-Clad's HA1 or Essentials collection; or (3) exchange of Damaged Cookware for a future purchase credit of 50% off purchases, up to $1,200.00, for any product(s) on All-Clad's website. The Settlement Class

Members who have Cookware that has not experienced "Sharp Edges" or who have discarded the Cookware may claim a future purchase credit of 35% off purchases, up to $750.00, on any product(s) on All-Clad's website

Separate from the Common Fund, Defendants will also pay all Notice and Administration Costs directly to the Settlement Administrator, and the approved Attorney Fee and Expense Award and all Service Payments to the Class Representatives.

Additionally, during the pendency of litigation, Defendants have removed "dishwasher safe" representations from the packaging and the All-Clad website following the filing of the first action in this litigation, as alleged in subsequent complaints filed, which are discussed below. Defendants have also notified All-Clad's authorized retailers of the removal of the "dishwasher safe" representations and are actively working to ensure "dishwasher safe" representations have been removed from retailers' floor displays and other marketing materials.  Thus, Plaintiffs consider the lawsuit was the catalyst for significant marketing and labeling changes by Defendants.

Notwithstanding the benefits to the Settlement Class, Plaintiffs do not seek to place monetary value on either the future purchase credits or for All-Clad's removal of "dishwasher safe" representations.

The proposed Settlement resolves the claims of Plaintiffs and the proposed nationwide Settlement Class.  The benefits of this proposed Settlement must be considered in the context of the risk that protracted litigation might lead to no recovery, or to a smaller recovery for Plaintiffs and/or proposed Settlement Class Members.  Further, Defendants have vehemently denied any liability and mounted a vigorous defense at every stage of this litigation, and Plaintiffs expect that All-Clad would have continued to do so through opposition to class certification, motions to

exclude Plaintiffs' experts' testimony, motion(s) for summary judgment, a trial(s) on the merits, and appeal.

In evaluating the terms of the Settlement, Proposed Class Counsel have concluded that the Settlement is in the best interest of Settlement Class Members due to: (1) the substantial relief afforded to the Settlement Class Members; (2) the risks and uncertainties of this complex litigation; (3) the expense and length of time necessary to prosecute this action through class certification, trial, and any subsequent appeals; and (4) the desirability of consummating the Settlement to provide prompt and effective relief to the Settlement Class Members. Considering these factors, as discussed below, Plaintiffs and Proposed Class Counsel believe that the fair and reasonable Settlement merits preliminary approval.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Summary of Allegations in the Various Filed Complaints

As alleged in the first filed *Mears* First Amended Complaint, All-Clad is one of the largest cookware companies in the United States and sells many units of Cookware a year online and through its well-known authorized retailers. FAC at ¶ 1.  All-Clad uniformly marketed, labeled, and represented the Cookware as being, among other things, conveniently dishwasher safe. *Id.* at ¶ 5.

The various pieces of Cookware are among All-Clad's top selling products. *Id.* at ¶ 8.  The cost of a single piece of the Cookware ranges between $80.00 and $500.00 MSRP, and the cost of an entire set is priced as high as $1,600.00 MSRP. *Id.* at ¶ 7. All-Clad has been able to charge these prices because, over the course of four decades, it has gained the trust of consumers, who reasonably believe that All-Clad products are made with quality materials, that the products can be used safely, as intended and marketed, and that All-Clad would stand by its warranty promise

to provide defect free Cookware that is actually dishwasher safe, as represented and warranted. *Id.* at ¶¶ 2, 64. However, as Plaintiffs contended, described above and below, the Cookware suffers from a Defect and is not, in fact, dishwasher safe.

Specifically, the Cookware at issue is multi-ply, bonded cookware, with alternating layers of stainless steel and aluminum. *Id.* at ¶ 34. The stainless steel forms the base of the Cookware, as well as a very thin top layer, which measures at .002 of an inch (approximately half of a human hair in thickness). *Id.* at ¶¶ 34 and 43. Aluminum is constructed in between the layers of stainless steel. *Id.* at ¶ 34. The second layer of aluminum is much thicker than the top layer of stainless steel. *Id.* at ¶ 44. When immersed with the stainless steel in the dishwashing detergent, the aluminum and steel form a galvanic couple that produces accelerated etching and corrosion of the aluminum. *Id.* As the aluminum corrodes away from the layers of stainless steel, what remains at the top is the 0.002 of an inch thin stainless steel layer protruding above the aluminum layer of the Cookware. *Id.* Consequently, Plaintiffs alleged the thin, sharp top layer of stainless steel becomes an unreasonably dangerous condition for consumers trying to handle the Cookware, including as it is intended. *Id.*

All-Clad's claims that the Cookware was dishwasher safe were pervasive, appearing on Cookware packaging, in Use and Care Manuals and Instructions, and throughout All-Clad's website (including in Stainless Steel Cookware brochures, in Stainless Steel FAQs, and on individual Cookware piece and multi-piece specifications). *Id.* at ¶ 39. Examples of All-Clad's "dishwasher safe" representations, include:

- "Care and Use: CLEANING: Dishwasher Safe."

- "The 'Stainless Steel' collection is completely dishwasher-safe. It is recommended that before you use your Stainless Steel All-Clad you wash it in the dishwasher first to remove any manufacturing residues and this will help to keep it shiny."

- "[]All-Clad's d5 Brushed Stainless Steel Collection: Dishwasher safe"

- "Made in the USA, D3 Stainless cookware offers warp-resistant strength and dishwasher safe convenience, plus it can be used on any cooktop, including induction."

*Id.* at ¶ 192.

Each of the Plaintiffs—including Jean Greeff, Miranda Murray, Brandi Milford, and Beira Montalvo—became interested in purchasing new dishwasher-safe cookware for cooking at home. *Id.* ¶ 71 [ECF No. 1], Murray Class Action Complaint ("Murray CAC") ¶¶ 70, 79; (ECF No. 1), Montalvo Class Action Complaint ("Montalvo CAC") ¶ 69; (ECF No. 1), Egidio Class Action Complaint ("Egidio CAC") ¶ 69 (ECF No. 1). Each Plaintiff purchased their Cookware in reliance on All-Clad's dishwasher-safe representations. Greeff FAC ¶ 71; Murray CAC ¶¶ 70, 79–80; Montalvo ¶ 69; Egidio CAC ¶ 69. Each Plaintiff used the Cookware as intended, cleaning it in the dishwasher in accordance with the use and care and instructions. Greeff FAC ¶ 72; Murray CAC ¶¶ 71, 81; Montalvo CAC ¶ 70; Egidio CAC ¶ 71. Over time, each Plaintiff noticed that the Cookware began to deteriorate and that the Cookware's edges became sharp to the touch. Greeff FAC ¶¶ 72–73; Murray CAC ¶¶ 73, 82; Montalvo ¶ 71; Egidio CAC ¶ 73.

The Complaints describe expert testing conducted on behalf of Plaintiffs that revealed that every piece of the Cookware contains the alleged Defect. Greeff FAC ¶¶ 41–48. Thus, Plaintiffs alleged that All-Clad's decision to market, label, and promote the Cookware as dishwasher safe (when it is not), supports Plaintiffs' allegations regarding Defendants' deceptive and unlawful conduct in the marketing and sale of the Cookware. *Id.* at ¶¶ 53–56.

Plaintiffs asserted that All-Clad's knowledge of the Defect is established through years of consumer complaints about the Cookware deteriorating in the dishwasher to the point the Cookware developed sharp edges together with All-Clad's responses to those complaints. *Id.* ¶¶ 78–90. Additionally, according to the Complaints, when All-Clad received warranty claims based

on the Defect, it replaced the defective Cookware with equally defective Cookware, improperly denying the warranty claims, and often misrepresenting to consumers that citrus dish pods and citrus detergents caused the Cookware's deterioration and sharp edges. *Id.* at ¶ 80. Plaintiffs contended that All-Clad's reported responses to customer complaints demonstrate that not only was All-Clad aware of the dangerous and potentially harmful Defect, but it also attempted to actively conceal the dangerous Defect from consumers and otherwise failed to honor its Warranty. *Id.* at ¶ 83.

Although All-Clad has acknowledged to certain consumers making warranty claims that the deterioration can occur when using a dishwasher (attributing it to citrus-based detergents), Plaintiffs claimed that it failed to issue a recall, warn consumers, or take any other affirmative steps to correct the problem in the Cookware already in the stream of commerce prior to Plaintiffs' initiation of their lawsuits. *Id.* at ¶ 103. Nor did All-Clad change its packaging, brochures, use and care instruction, website representations, or authorized retailer descriptions and specifications until after litigation had commenced. *Id.* After it was sued in California, All-Clad began removing "dishwasher-safe" representations from its website. It now, in certain locations on its website, recommends that consumers "Hand wash to maintain the pan's beauty." *Id.* ¶ 7. Accordingly, these allegations formed the based for Plaintiffs' various Complaints.

### B. Relevant Procedural Background

On April 16, 2020, the first Class Action Complaint was filed against All-Clad alleging that the Cookware was represented as dishwasher-safe but instead was designed, manufactured, distributed, marketed, and sold with construction that deteriorates during dishwasher cleaning in the Northern District of California (*Mears v. All-Clad Metalcrafters, LLC, et al.*, Case No. 3:20-cv-02662-SI). Once the Mears action was filed, the Parties filed a Rule 26(f) Report, negotiated

several case management orders, and participated in multiple case management conferences in the Northern District of California. Exhibit 2 at ¶ 8 (Joint Declaration of Proposed Class Counsel in Support of Plaintiffs' Unopposed Motion For Preliminary Approval of Class Action Settlement).

Following the first case management conference, the Parties agreed to attempt early resolution of the case through a formal mediation. *Id.* On October 13-14, 2020, the Parties mediated with the Honorable (Ret.) Richard Kramer with JAMS. *Id.* Following the Parties' unsuccessful initial mediation, Defendants served an Answer to the Mears Complaint (*Mears Action at ECF No. 15*), and the Parties began engaging in formal discovery. Exhibit 2 at ¶ 9.

Subsequently, related actions were filed by Plaintiffs in the District of Massachusetts (*Egidio v. All-Clad Metalcrafters, LLC et al.*, Civil Action No. 1:20-cv-12025) on November 11, 2020; the Southern District of Florida (*Montalvo v. All-Clad Metalcrafters, LLC et al.*, Civil Action No. 9:20-cv-82384) on December 22, 2020; and the Northern District of Georgia (*Murray et al. v. All-Clad Metalcrafters, LLC et al.*, Civil Action No. 1:21-cv-00095) on January 7, 2021.

On January 21, 2021, Defendants filed a Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings ("Motion to Transfer") before the Judicial Panel for Multidistrict Litigation ("JPML"), seeking to transfer the four actions to the Western District of Pennsylvania. (JPML ECF No. 1). Plaintiffs filed an opposition brief, arguing that Proposed Class Counsel were counsel of record for all actions, and that this litigation could replicate the success Proposed Class Counsel had previously had in informally coordinating similarly situated litigation. (JPML ECF No. 9).

During the pendency of Defendants' Motion to Transfer, litigation in each of the four actions continued. Exhibit 2 at ¶ 13. In Mears, the Parties briefed Defendants' Motion to Stay the Action Pending Likely Transfer by the JPML (Mears Action at ECF Nos. 52, 55, and 57). Plaintiff

9

Mears opposed Defendants' Motion; however, the Motion was granted (Mears Action at ECF No. 59). Concurrently, in Egidio, Defendants filed a Motion to Stay the Action, as well as Motions to Dismiss and to Strike Complaint. (Egidio Action at ECF Nos. 11, 19, and 16). Plaintiff Egidio filed an opposition brief to the Motion to Stay the Action (Egidio Action at ECF No. 14). Defendants' Motion to Stay was denied in the Egidio action (Egidio Action at ECF No. 15) and briefing on the Defendants' Motions to Dismiss and Strike Class Allegations was completed in the District of Massachusetts. (Egidio Action at ECF Nos. 27 and 28).

On March 25, 2021, the Parties appeared before the JPML and presented arguments on Defendants' Motion to Transfer. Following more than a year of litigation, on March 31, 2021, the Parties received the JPML's Order consolidating the four actions and transferring the cases to the Western District of Pennsylvania. *In re All-Clad Metalcrafters, LLC, Cookware Mktg. & Sales Pracs. Litig*., 532 F. Supp. 3d 1411 (J.P.M.L. 2021).

Upon consolidation of the multidistrict litigation in the Western District of Pennsylvania, the undersigned Proposed Class Counsel filed the Unopposed Motion to Appoint Counsel Martha Geer, Harper Segui, and Rachel Soffin as Interim Co-Lead Counsel (ECF No. 22) on May 20, 2021, which was later granted by the Court on June 24, 2021 (ECF No. 34).

On June 23, 2021 (ECF No. 32), the Court held an Initial Status Conference in order to assess where the Parties were in terms of discovery.  Subsequently, after significant negotiation, the Parties filed the Joint Motion for Protective Order on July 1, 2021 (ECF No. 36), the Proposed Rule 26(f) Discovery Plan on July 12, 2021 (ECF No. 40), and the Joint Motion for Discovery governing hard copy documents as well as ESI on August 13, 2021 (ECF No. 45) in order to continue engaging in discovery.

The Parties continued the formal discovery initiated in the Mears case, including substantial production of documents. Exhibit 2 at ¶ 18. Plaintiffs served Defendants with multiple sets of discovery, including targeted Requests for Admission. *Id.* Plaintiffs also served subpoenas on All-Clad authorized retailers, negotiating the scope and timing of those productions. *Id.* As indicated above, Plaintiffs continued to consult with their experts during the various discovery stages to ensure discovery was thorough and would aid the experts in producing reports. *Id.* at 19.

Since the initiation of the consolidated matter, the Parties have filed 10 Joint Status Reports (May 25, 2021 (ECF No. 25), July 30, 2021 (ECF No. 44), August 31, 2021 (ECF No. 50), September 30, 2021 (ECF No. 52), October 29, 2021 (ECF No. 57), November 30, 2021 (ECF No. 58), December 30, 2021 (ECF No. 60), January 31, 2022 (ECF No. 63), February 17, 2022 (ECF No. 64), May 23, 2022 (ECF No. 68)).

The Parties filed a Stipulation of Dismissal of Plaintiff Mears on August 25, 2021, and substituted Plaintiff Greeff in the *Mears* action as the California Class Representative (ECF No. 47). Shortly thereafter, the Parties engaged in an additional round of extensive, fully-briefed argument over dismissal of all Complaints. Specifically, Defendants filed a Motion to Dismiss and to Strike the Class-Action Allegations on August 27, 2021 (ECF No. 48), to which Plaintiffs responded on September 29, 2021 (ECF No. 51), and Defendants replied on October 14, 2021 (ECF No. 56).

While litigation continued, the Parties agreed to mediate again and selected the Honorable Wayne R. Andersen (Ret.), an experienced class action neutral with JAMS. In the interim, the Court scheduled a hearing for January 25, 2022, on Defendants' various pending Motions. The Parties filed a Joint Motion to Reschedule Hearing given the progress made during settlement negotiations and in anticipation of the upcoming mediation. (ECF No. 61). As detailed below, on

February 16, 2022, the Parties mediated and were able to successfully resolve the substantive terms of the Settlement Agreement.

If the Parties had not negotiated this Settlement, the Parties would have had argument set before the Court over the pending Motion to Dismiss and to Strike the Class-Action Allegations. Although Plaintiffs were confident they would prevail on the majority of the arguments, the outcome of the Motion was uncertain. Exhibit 2 at ¶ 39. Depending on the ruling, further rounds of amending the operative Complaint and Motion to Dismiss briefing would arise, extending the amount of time before Plaintiffs obtained any relief and potentially risking the loss of some or all of that relief.  Similarly, the Parties would have to continue to pay expert witnesses and technical consultants, as well as expend substantial time devoted to briefing Plaintiffs' motions for class certification, *Daubert* motions, and summary judgment motions, preparing for and conducting trial, post-trial motion practice, and likely appeals. *Id.* at ¶ 40. Absent a settlement, the final resolution of this litigation through the trial process would undoubtedly take years of protracted, adversarial litigation and appeals, which would delay relief to tens of thousands of Settlement Class Members. *Id.*  Thus, continuing to litigate the multidistrict litigation would require much of the Parties' resources and would delay relief for Settlement Class Members. *Id.* Even if Plaintiffs prevailed at each of these stages, in the absence of a settlement, they would have proceeded to trial and appellate proceedings—an overall procedural process that would have likely taken years.

### C.  Class Counsel's Investigation

Class Counsel spent many hours investigating the claims of several potential plaintiffs against All-Clad.  *See id.* Class Counsel performed research on All-Clad, its Cookware, the warranties, care, and consumer complaints.  *Id.* at ¶¶ 2-3. Additionally, numerous consumers were

interviewed, and documents collected to gather information about the Cookware, the alleged defect, and All-Clad's actions regarding the alleged defect and its knowledge of the same. *Id.*

Further, Class Counsel worked closely with well-qualified materials and metallurgy experts who spent many hours investigating the Cookware, including, research of the product, specifications, industry standards, and alternative feasible designs. *Id.* at ¶ 4. As part of the investigation, the engineer collectively performed dishwasher testing, microscopic analysis, and documented the Cookware materials and construction. *Id.* The engineer also provided ongoing assistance to Class Counsel during litigation, including formulation of discovery questions. *Id.* at ¶ 19.

The expert investigation and analysis were essential to Class Counsel's ability to identify the alleged Defect, and analyze the nature of All-Clad's conduct and potential claims and remedies. *See id.* at ¶¶ 4-6, 19, 23-24. Class Counsel thus spent a significant amount of time analyzing information regarding the alleged Defect. *See id.* at ¶¶ 2-5. Class Counsel also expended significant resources researching and developing the legal claims at issue. *Id.* at ¶ 2. Class Counsel is familiar with the claims as they have litigated and resolved cases with similar product defect and false advertising factual and legal issues. *Id.* at ¶ 50. Class Counsel has experience in understanding the remedies and damages at issue, as well as what information is critical in determining class membership. *Id.*

### D. Mediation and Subsequent Settlement Discussions

As already referenced above, the Parties began preliminary settlement discussions more than twenty-one months ago, in October of 2020. *Id.* at ¶ 21. Specifically, early in the *Mears* litigation the Parties' mediated with Judge Kramer. *Id.* at ¶ 22.

Prior to mediation, the Parties exchanged requests for information pursuant to Fed. R. Evid. 408. *Id.* at ¶ 23.  The Plaintiffs also made a detailed settlement demand and provided preliminary expert work in support thereof. *Id.* The Parties also provided detailed mediation statements to Judge Kramer, which were exchanged prior to mediation. *Id.*

As a result of extensive expert investigation, as well as independent investigation of Class Counsel regarding the dishwasher-safe representations and the alleged Defect, Plaintiffs and Proposed Class Counsel entered these settlement negotiations with substantial information about the nature and extent of the challenged practices, and the merits of the legal claims and factual allegations. *Id.* at ¶ 24.  Plaintiffs and Class Counsel also had the ability to review key documents in this matter, including significant discovery from Defendants.  *Id.* Review of this information positioned Proposed Class Counsel to evaluate with confidence the strengths and weaknesses of Plaintiffs' claims and prospects for success at class certification, summary judgment, and trial. *Id.*

The Parties attended two full-day mediation sessions (on October 13 and 14, 2020) with Judge Kramer. *Id.* at ¶ 25.  While the Parties were able to make some progress toward settlement of this pending litigation, the Parties were unable to fully resolve this matter at that time. *Id.* Following the unsuccessful mediation, litigation ensued.  *Id.* at ¶ 26.

After consolidation of the various actions into the multidistrict litigation in the Western District of Pennsylvania, and continued litigation therein, the Parties scheduled a second round of formal mediation on February 16, 2022, with Judge Andersen. *Id.* Prior to the mediation, the Parties spent months negotiating the terms of the settlement agreement, and regularly participating in Zoom conferences to ensure the success of the second round of mediations. *Id.*

While many issues were negotiated prior to the February 16th mediation, the mediation took another full day that went late into the night, and included attendees participating via Zoom

from France, to resolve further substantive issues, including establishment of the Common Fund. *Id.* at ¶ 27.   During this round of formal mediation, the Parties were able to make substantial progress toward settlement of this pending litigation, and the Parties reached an agreement on terms and the Common Fund. *Id.*

Following the February 16th mediation, the Parties continued to negotiate the details of the Settlement Agreement over the next five months, including the products that could be exchanged, the release, claims administrator, notice plan, and schedule. *Id.* at ¶ 28.   To finalize the Settlement Agreement, the Parties had regular Zoom conferences and continued to exchange redlines and drafts of documents. *Id.*   Accordingly, the terms of the Settlement Agreement were negotiated at arm's length, and always active.

## III.   MATERIAL TERMS OF THE SETTLEMENT AGREEMENT AND NOTICE PLAN

As described above, the Settlement Agreement provides for the establishment of a Common Fund up to $4,000,000.00, with costs of administration, service awards, and Plaintiffs' Attorneys Fees and Costs paid separately. The Settlement Benefits provide three options for Settlement Class Members whose Cookware has experienced "Sharp Edges" and another option for Settlement Class Members whose Cookware has been discarded or not experienced "Sharp Edges."

In addition to the monetary value of the Proposed Settlement, All-Clad has removed and will continue to ensure its "dishwasher safe" representations are removed from Cookware marketing and in the marketplace.

The Proposed Settlement offers a substantial recovery to the Settlement Class and does so through a claims process that does not impose undue burden on the Settlement Class.   The Settlement Agreement treats all Members of the Settlement Class fairly and equally as the recovery

is based upon whether Class Members are in possession of the Damaged Cookware or not, and the Proposed Settlement gives Class Members choices that are equal but also respects that consumer preferences may differ after Class Members have learned about the alleged Defect.

### A.     The Settlement Fund

Defendants will establish a Common Fund that will provide for the refunds available to Class Members under the Damaged Cookware benefits.   No other aspects of the Proposed Settlement will be drawn from the Settlement Fund, meaning all other expenses incurred by Defendants under the Proposed Settlement are in addition to the monetary value allocated toward the Common Fund, as follows:

1.   A $3,000,000 fund will be created 30 days after the Claims Administrator has engaged in the process of determining the number of claims where the Cookware submitted constitutes Damaged Cookware, which will be used to reimburse consumers who chose to return the Damaged Cookware to All-Clad in exchange for new D3/D5 cookware of the same type/style and also claim a $75 refund (discontinued LTD cookware will be replaced with similar D3 cookware);

2.   Each refund for Damaged Cookware will be $75.

3.   If the amount of refund claims totals less than $3,000,000, All-Clad will create a fund in the actual amount of all such claims.

4.   If the amount of refund claims exceeds $3,000,000, All-Clad will add as much money as needed to pay such claims, up to an additional $1,000,000, for a total of $4,000,000.

5.   If the total amount of refund claims exceeds $4,000,000, the amount paid on each claim will be reduced *pro-rata.*

### B.   The Settlement Class

Plaintiffs seek preliminary approval of the Settlement on behalf of the following Settlement

Class:

> All persons in the United States, including Puerto Rico and the District of
> Columbia, who, between January 1, 2015, and the date of the filing of the Motion
> for Preliminary Approval, have purchased All-Clad D3, D5, or LTD Cookware who
> do not exclude themselves from (opt-out of) the class.

Excluded from this Settlement Class are:

> Defendants, as well as Defendants' affiliates, employees, officers, and directors,
> attorneys, agents, insurers, and the attorneys representing Defendants in this case;
> the judges and mediators to whom this case is assigned and their immediate family
> members; all persons who request exclusion from (opt-out of) the Settlement;
> anyone claiming personal injury, property damage (other than to their Cookware),
> or subrogation; and all persons who previously released any claims encompassed
> in this Settlement.

Plaintiffs and All-Clad agree that the Settlement Class includes tens of thousands of

members.

### C.   Class Benefits

Settlement Class Members fall into two distinct groups with different options for relief,

each of which is of equal value.  Settlement Class Members who are in current possession of the

Damaged Cookware are entitled to select one of three of the following options:

- Option 1.  Settlement Class Members electing this Option will submit the Damaged
  Cookware to All-Clad.  In exchange, they will receive replacement Cookware of the
  same type/style and apply for a $75 refund;

- Option 2.  Settlement Class Members electing this Option will submit the Damaged
  Cookware to All-Clad.  In exchange, they will receive either (i) Hard Anodized (HA1)
  five-piece fry-pan set (SKU 2100122734) or (ii) Essentials Hard Anodized Nonstick
  thirteen-piece cookware set (SKU 2100120788);

- Option 3.  Settlement Class Members electing this Option will submit the Damaged
  Cookware to All-Clad.  In exchange, they will apply for a future credit of 50% off
  purchases, up to $1,200, on All-Clad's website.

All-Clad will cover all shipping costs, including both the shipment of the Damaged Cookware from the Settlement Class Members as well as the shipment of any cookware under Options 1 or 2 to Settlement Class Members.

Settlement Class Members who no longer possess the Damaged Cookware or who have the Cookware but whose Cookware has not yet manifested sharp edges are entitled to the following:

- <u>Alternate Option.</u>  Settlement Class Members electing this Option will submit a claim, with proof of purchase, for a future purchase credit of 35% off purchases, up to $750.00, on any product(s) on All-Clad's website. Proof of purchase can include a store receipt, invoice, order confirmation, credit card receipt, canceled check, or other document(s) demonstrating that you purchased Cookware during the class period.

All-Clad also affirms that it has completed packaging changes to remove "dishwasher-safe" representations from all of the Cookware packaging and labeling and has also completed removal of the "dishwasher-safe" representations on the All-Clad website and any other promotional and marketing materials.  All-Clad has notified its authorized retailers of the removal of the "dishwasher-safe" representations on the All-Clad website and any other promotional and marketing materials and is actively working to complete re-notification instructing retailers to remove "dishwasher-safe" representations from floor models and other marketing materials.  The purpose of including this affirmation in the Proposed Settlement is to ensure that the Cookware, and any associated advertising and marketing materials, no longer represents to consumers that the Cookware is dishwasher safe.

### D.    Class Notice

Defendants will pay all costs related to the notice program separate and apart from any relief provided to the Settlement Class.

Subject to the Court's approval of the notice program, notice dissemination will be commenced within 60 days after entry of the Preliminary Approval Order.

The notice program will consist of direct email notice to purchasers of All-Clad Cookware and a digital (online) notice program, targeted to potential members of the class, and designed to reach or exceed 70% of the target audience.  Direct email notice will be accomplished using email addresses contained in All-Clad's registration records and email addresses provided to the Claims Administrator by All-Clad's authorized retailers. The Parties were also able to successfully negotiate with most of All-Clad's largest authorized retailers to provide direct email notice to the Settlement Class Members or to provide the email addresses to the Claims Administrator for direct notice.  All-Clad's authorized retailers participating in the notice program include Amazon; Macy's; Bloomingdale's; Crate & Barrel; and Williams-Sonoma. Amazon estimates that its direct email notice typically meets or exceeds 90% reach of its customers.

The Settlement Class Notice, in a form substantially similar to the one attached to the Settlement Agreement (Exhibit 1) as Exhibit "A," will advise Class Members of the general terms of the settlement, including a description of the case, information regarding the identity of the Class members, and what claims will be released.  Additionally, exclusion from the Settlement and opt-out procedures will be explained as well as how Class Members may exercise their right to object to the proposed Settlement at the Final Approval Hearing.  The Notice will also detail the amount of requested attorneys' fees as well as the amount of the Settlement Class Representative Service Payments.  Lastly, the Notice will include a Claim Form, in a form substantially similar to the one attached to the Settlement Agreement (Exhibit 1) as Exhibit "B," which will be how Class Members demonstrate their eligibility for recovery.

### E.    Claims Process

In order for a claim to be eligible, Settlement Class Members must submit a Claim Form to the Claims Administrator that is post-marked during the Claims Submission Period or submitted through the online portal during the Claims Submission Period, and for Settlement Class Members who are not exchanging Damaged Cookware, will include proof of purchase such as store receipt, invoice, order confirmation, credit card receipt, canceled check, or other document(s)

The Claims Administrator will review all properly submitted claims on a rolling basis upon receipt.  The Claims Administrator will be responsible for conditionally approving the claim by ensuring that all information and documentation required under this Settlement Agreement has been submitted.  Following the Effective Date, the Claims Administrator will submit those properly supported and conditionally approved claims to All-Clad for processing and payment.

The Claims Administrator will process claims for relief based on return of Damaged Cookware as follows.  First, within 15 days of the latter of the Effective Date or the close of the Claims Submission Period, the Claims Administrator will provide to All-Clad a detailed report identifying all Settlement Class Members who have elected to return their Damaged Cookware so that All-Clad can arrange for shipping.  The report will also identify which Option those Settlement Class Members have elected.  Second, within 15 days of receiving that detailed report, All-Clad will arrange for the return of the Damaged Cookware from the Settlement Class Members on the Returns List.  Third, Settlement Class Members will have 30 days from the date All-Clad arranges for the return of the Damaged Cookware to All-Clad to return the Cookware to All-Clad. Upon receipt of the Damaged Cookware and confirmation that the Cookware has experienced the "Sharp Edges" issue, All-Clad will inform the Claims Administrator which Settlement Class Members'

Damaged Cookware was returned.  Then, the Claims Administrator will calculate and inform All-Clad of the total amount of $75 refunds to be issued for purposes of funding the Settlement Fund.

If All-Clad determines that the Settlement Class Member's returned Cookware is not exhibiting the "Sharp Edges" issue, All-Clad will so inform the Claims Administrator, which will inform the Settlement Class Member, Settlement Class Counsel, and Defendants' Counsel of that determination. Should the Settlement Class Member wish to dispute All-Clad's determination, they may follow the dispute-resolution procedures in Exhibit 1 at 15(E).

Once the Claims Administrator has informed All-Clad of the amount of $75 refunds, All-Clad will fund the Settlement Fund. Then, the Claims Administrator will commence issuing refund payments or future purchase credits, as applicable, to those Settlement Class Members.  Within 30 days of issuing refund payments or future purchase credits, All-Clad will commence shipping the replacement products to those Settlement Class Members seeking replacement products, subject to supply chain constraints.  Separately, within 30 days of the latter of creation of the Settlement Fund, the Claims Administrator will issue future purchase credits to all Settlement Class Members who have not experienced the "sharp edges" issues or have discarded the Cookware, and who have submitted a claim for a future credit purchase.

As mentioned above, All-Clad will pay all costs associated with the claims process separate and apart from any relief provided to the Settlement Class.

## F.    Attorneys' Fees and Costs and Service Awards to Named Plaintiffs

The amount of Settlement Class Counsel Fees and Expenses to be paid to Class Counsel shall be determined by the Court.  After the Court preliminarily approves the Settlement, Class Counsel may submit a Fee Application to the Court.

The Parties have agreed that Settlement Class Counsel will seek Settlement Class Representative Service Payments (not to exceed $2,500.00) from the Court for each Class Representative, to be paid separate and apart from any relief provided to the Settlement Class.

The Parties have agreed that Settlement Class Counsel may apply for an award of attorneys' fees, inclusive of costs and expenses, and Settlement Class Representative Service Payments, not to exceed $2,000,000.00 in the aggregate, to be paid separate and apart from the Common Fund or any other relief provided to the Settlement Class.

The enforceability of the Agreement is not contingent on the amount of attorneys' fees or costs or Service Awards to Named Plaintiffs that may be approved by the Court.

## IV.    LEGAL STANDARD

"A class action settlement is left to the sound discretion of the district court." *In re N.J. Tax Sales Certificates Antitrust Litig.*, 750 Fed. App'x 73, 76 (3d Cir. 2018).  However, the Third Circuit recognizes a strong presumption premised upon "[t]he strong judicial policy in favor of class action settlement [which] contemplates a circumscribed role for the district courts in settlement review and approval proceedings."  *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010); *see also Hughes v. InMotion Entm't*, No. 07cv1299, 2008 WL 3889725, at *6 (W.D. Pa. Aug. 18, 2008) ("The strong public policy and high judicial favor for negotiated settlements of litigation is particularly keen in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.") (internal quotation marks omitted).

Ultimately, "[p]reliminary approval of a proposed class action settlement is not binding on the Court and is generally granted unless a proposed settlement is obviously deficient." *McRobie v. Credit Prot. Assoc.*, No. 5:18-cv-00566, 2020 WL 6822970, at *3 (E.D. Pa. Nov. 20, 2020).

22

"[W]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *Shapiro v. Alliance MMA, Inc.*, No. 17-2583 (RBK/AMD), 2018 WL 3158812, at *2 (D.N.J. June 28, 2018). "[T]he bar to meet the 'fair, reasonable and adequate' standard is lowered" for preliminary approval such that a settlement agreement will fall within the range of possible approval and avoid obvious problems and deficiencies so long as "(1) the settlement negotiations occurred at arm's length, (2) there was sufficient discovery, and (3) the proponents of settlement are experienced in litigation." *Kopchak v. United Res. Sys.*, No. 13-5884, 2016 WL 4138633, at *6 (E.D. Pa. Aug. 4, 2016) (citing *Harlan v. Transworld Sys., Inc.*, 302 F.R.D. 319, 324 (E.D. Pa. 2014)).

Where "the Court has not already certified a class, the Court must also determine whether the proposed settlement class satisfies the requirements of Rule 23." *Id.* "Thus, in connection with an order preliminarily granting approval of a class action settlement, the Court is not certifying the class at the preliminary approval stage, but rather, is making a preliminary determination that it will likely be able to certify the class at the final approval stage." *Maverick Neutral Levered Fund, Ltd. v. Valeant Pharma. Int'l, Inc.*, No. 3:20-cv-02190 (MAS) (LHG), 2021 WL 7872087, at *5 (D.N.J. Jan. 26, 2021). Conditional certification "for purposes of providing notice" requires "a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." *In re: Processed Egg Prods. Antitrust Litig.*, 2014 WL 12610216, at *1 (E.D. Pa. July 30, 2014) (citing David F. Herr, *Ann. Manual for Complex Litig.* § 21.632 (West, 4th ed. 2013)).

## V.     THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

The Proposed Settlement is the product of more than two years of litigation, and numerous arm's-length negotiations with the assistance of two different mediators who were neutral and are experienced in class action litigation, which is one of the primary procedural factors the Court considers in reviewing a preliminary approval motion.  *See Glaberson v. Comcast Corp.*, No. 03-6604, 2014 WL 7008539, at *4 (E.D. Pa. Dec. 12, 2014) ("Preliminary approval analysis often focuses on whether the settlement is the product of arms-length negotiations.") (internal quotation marks omitted); Rubenstein, *Newberg on Class Actions* §13:14 (5th ed. 2015) ("The primary procedural factor courts consider in determining whether to preliminarily approve a proposed settlement is whether the agreement arose out of arms-length-noncollusive negotiations."). Further, all of the relevant factors weigh in favor of the Proposed Settlement here.  The Proposed Settlement is fair, adequate, and reasonable.  Given the attendant risks of continued litigation without Settlement, such as losing claims at the motion to dismiss stage, the possibility of denial of class certification, the possibility of losing claims at summary judgment, and the possibility of a protracted and complex trial requiring an expensive battle of the experts followed by an appeal, the Settlement is in the best interest of Class Members and this Court should preliminarily approve the Settlement and certify a Settlement Class.

### E.  The Settlement Was the Result of Arm's Length Negotiations Between the Parties, Has No Obvious Deficiencies, and Treats Settlement Class Members Equally.

As required (and explained in *Kopchak*, above), the settlement negotiations in this action occurred at arm's length, the Parties had sufficient discovery to make an informed judgment about what a reasonable settlement would be, and the attorneys working on settlement have years of class action litigation experience. Specifically, Proposed Class Counsel have extensive experience

handling product defect and false advertising class action lawsuits, with successful results and recoveries to class members across the country. *See* Exhibit 2 at ¶ 49.

Further, although the Parties worked for months to resolve the case and finalize the Settlement, "essentially all the issues were tested in the crucible of the adversarial process." *Glaberson v. Comcast Corp.*, No. 03-6604, 2014 WL 7008539, at *4 (E.D. Pa. Dec. 12, 2014). The Parties were fully aware of the strengths and weaknesses of each other's positions as well as their own. Only after bringing that knowledge to a second round of formal mediation on February 16, 2022, and by working with Judge Andersen, a highly respected and experienced mediator, were the Parties able to reach a settlement in principle. Nonetheless, it took the Parties an additional five months and multiple rounds of exchanged drafts to come to an agreement on the full final language of the Settlement.

Sufficient formal and informal discovery occurred for proposed Class Counsel to make informed strategy decisions regarding the Settlement. In addition, from the inception of the case, undersigned counsel consulted with an expert to understand the alleged Defect, and the expert's investigation and analysis informed how Plaintiffs constructed the complaints, their responses to motions to dismiss, the discovery served on Defendants, and Plaintiffs responses to discovery served by Defendants. Discovery began prior to consolidation of the various cases into this MDL, and it has continued since the consolidation. Plaintiffs were able to seek discovery of critical documents in part because of Proposed Class Counsel's work with the consulting expert. Proposed Class Counsel also diligently sought documents through informal discovery. Through all of Proposed Class Counsel's substantial efforts, sufficient discovery has been conducted for Proposed Class Counsel to make informed judgments for purposes of Settlement, and additional discovery would provide little value in further assessing the merits of Plaintiffs' claims and defenses.

The Settlement also treats Settlement Class Members fairly. The Parties labored to provide choices to Settlement Class Members with the understanding that some Settlement Class Members may no longer have the Damaged Cookware or other Class Members' Cookware may not have ever developed "sharp edges." Those individuals are eligible for a significant future purchase credit. The Parties also took into account the fact that some Settlement Class Members might want to exchange the Damaged Cookware for Cookware of the same style, but that those individuals should still receive a partial refund because they purchased the Cookware initially under the belief that it was dishwasher safe. The Parties also respected that some Settlement Class Members may not want to use a new set of the same style of Cookware because of the importance of having dishwasher-safe cookware that will not deteriorate, and therefore the Settlement provides Settlement Class Members with the option to exchange the Damaged Cookware for designated dishwasher-safe cookware or a future purchase credit that would allow them to select their own preferred cookware. These offers have significant value.

### F.  The Settlement Falls Within the Range of Possible Approval.

The Settlement is within the range of settlements worthy of final approval as fair, reasonable, and adequate.  The Settlement resolves the core dispute in the case: that Defendants led consumers to believe that the Cookware was dishwasher-safe when, in fact, it was not.  The Settlement gives Settlement Class Members the option to elect dishwasher-safe cookware or cookware of their choosing that does not contain representations as pertains to "dishwasher-safe."

Importantly, the benefits of the Settlement must be weighed against the inherent risks of continued litigation.  Although the litigation has lasted over two years, and several rounds of briefing on motions to dismiss, the motions to dismiss have not yet been decided, leaving significant risk and uncertainty for Plaintiffs.  The $3,000,000 to $4,000,000 value of the fund

reflects these risks while providing a sound recovery for the relative damages suffered by the Settlement Class Members.

The Third Circuit has adopted a number of tests, including the *Girsh* nine-factor test, to assist district courts in determining whether a settlement is fair, reasonable, and adequate. *In re Prudential*, 148 F.3d 238, 317 (3d Cir. 1998). "At the preliminary approval stage, however, the Court need not address these factors, as the standard for preliminary approval is far less demanding." *Gates v. Rohm and Haas Co.*, 248 F.R.D. 434, 444 n.7 (E.D. Pa. 2008).

### G.  The Proposed Notice Program Is Adequate.

Rule 23(e) of the Federal Rules of Civil Procedure requires that Settlement Class Members are provided the "best notice that is practicable under the circumstances." The Settlement Agreement accounts for each requirement under the Rules. *See* Exhibit 3. Under the Settlement Agreement, the Settlement Class Notice will be disseminated within 60 days of the date of the Preliminary Approval Order. Purchasers of the Cookware will be emailed utilizing All-Clad's records of purchasers, as well as information provided by retailers. An online notice program will also be created. The Settlement Class Notice will contain the nature of the action; the definition of the class certified; the claims; information pertaining to all the rights afforded to the Settlement Class Members; information pertaining to all obligations of the Settlement Class Members; and information pertaining to all possible relief available. This will afford Settlement Class Members "due process" as necessary under the rules. *Gates v. Rohm and Haas Co.*, 248 F.R.D. 434, 445 (E.D. Pa. 2008). The means by which the Parties intend to disseminate notice is with the intent of providing the most comprehensive notice possible.

**VI.     THE COURT SHOULD ADOPT THE FOLLOWING SCHEDULE FOR SUBSEQUENT CLASS-RELATED EVENTS**

An order preliminarily certifying the Settlement Class and preliminarily approving the proposed Settlement Agreement would trigger a series of events designed to inform absent Class Members about the Order.  In the Settlement Agreement, the Parties agreed to a schedule for those events.  For the Court's convenience, the Plaintiffs recite the agreed-upon schedule as follows and ask the Court to include these deadlines in any Order granting the preliminary approval motion.

| Event/Action | Days After Preliminary Approval |
| --- | --- |
| **Preliminary Approval Order (PAO)** | 0 |
| Defendants' Counsel Notifies States' Attorneys General of PAO | 10 |
| Angeion Establishes Settlement Website. | 60 |
| Angeion Establishes Toll-Free Number to Request Claims Forms | 60 |
| Dissemination of Settlement Class Notice | 60 |
| Motion for an Award of Attorneys' Fees, Costs, Expenses and Settlement Class Representative Service Payments | 60 |
| 1. Opt-Out from or Objection to Settlement Request 2. Notice of Appearance for Attorney Representing Objector 3. Objection Filing | 105 |
| 1. Final Approval Motion 2. Defendants' Declaration re: Claims Administration | 130 |
| Defendants File Declaration by Claims Administrator | 130 |

| | |
|---|---|
| Set Deadline for Final Approval Hearing | 145 |

| Event/Action | Days After Final Approval Order |
|---|---|
| **Final Approval Order (FAO)** | 0 |
| Claims Deadline | 60 |
| Angeion Validates Clams, Forwards Returns List to All-Clad | 75 |
| All-Clad Starts Sending RMAs | 90 |
| Class Members Must Return Cookware | 120 |
| All-Clad Validates Returns for Sharp Edges, Reports to Angeion | 150 |
| Angeion Totals $75 Claims for Settlement Fund | 155 |
| All-Clad Funds Settlement Fund | 165 |
| 1. Angeion Begins Sending $75 Payments.<br>2. Angeion/All-Clad Begins Sending Credits.<br>3. All-Clad Begins Sending Replacement Cookware | 180 |

There are blanks in the Proposed Preliminary Approval Order to fill in the dates for the actual deadlines corresponding to the time periods set forth in the Settlement Agreement, which are calculated based upon the date the Preliminary Order is signed.

The agreed-upon schedule begins to run from as soon as practical from the date on which this Court enters a Preliminary Approval Order. These dates appear in the master schedule in the Preliminary Approval Order.

Settlement Class Members who wish to object to the Settlement must do so 45 days after the Notice Plan begins. To be eligible to receive a payment from the Settlement, Settlement Class Members must submit a completed Claims Package within four months of the Effective Date.

Paragraph 17 of the Preliminary Approval Order provides a blank for a date for the Final Fairness Approval Hearing, which the Parties request to be at least 145 days from the date of the Preliminary Approval Order is entered. The Parties will present at the Final Fairness Hearing any further evidence necessary to secure final approval of the Settlement Order.

## VII.   THE SETTLEMENT CLASS SHOULD BE CONDITIONALLY CERTIFIED

### H.  The Rule 23(a) Requirements are Satisfied

In order for the Court to certify a class, Rule 23(a) of the Federal Rules of Civil Procedure requires the following: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

### 1.  The Settlement Class is so numerous that joinder is impracticable.

The Parties agree that there are tens of thousands of consumers across the United States who have purchased the Cookware who may be entitled to the relief provided by the Settlement. It is well established that "'if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.'" *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 106 (D.N.J. 2012) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001)). Many of these customers purchased the Cookware from the largest retailers of home goods in the country, including Amazon, Macy's, Bloomingdales, Crate & Barrel, William-Sonoma, and Bed Bath & Beyond. All-Clad has provided sales data demonstrating there has been

a substantial amount of Cookware distributed to its retailers during the Class Period. Exhibit 2 at ¶ 31. Although many consumers have multiple pieces of the Cookware, it is clear that the Settlement Class Members are in the tens of thousands. *Id.* Accordingly, numerosity is plainly met in this case.

### 2.   There are questions of law and fact common to the Settlement Class.

Commonality is present where resolution of a common question of law or fact is "of such a nature that it is capable of class-wide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551 (2011).  All that is necessary to satisfy commonality in the Third Circuit is that "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001).

The Settlement Class undoubtably meets this low threshold.  From the outset, the heart of the litigation centered on two essential questions: Whether the Cookware contained a defect and whether the Cookware was dishwasher safe as represented.  Then, there are additional questions common to the class, such as whether Defendants knew or should have known about the alleged Defect in the Cookware and whether Defendants knew or should have known that the Cookware was not dishwasher safe.  Additionally, there are legal questions whether Defendants breached either express or implied warranties relating to the Cookware as well as whether Defendants engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing the allegedly defective Cookware. The issues involving the Settlement Class are sufficient to demonstrate commonality.

### 3.   Plaintiffs' claims are typical of the claims of the Settlement Class.

Typicality requires that the claims of class representatives and class members "arise out of the same conduct and core facts."  *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 342 (3d Cir. 2010).  "If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences."  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001).  The inquiry overlaps with the commonality analysis, and the two "tend to merge because they focus on similar aspects of the alleged claim." *Id.* (cleaned up).

Here, the typicality requirement is met because the Named Plaintiffs alleged that they suffered the same injury—the falsely marketed, defective product—as the other Settlement Class Members.  Each Class Member purchased the Cookware, which was uniformly marketed as dishwasher safe, but which Plaintiffs alleged was not.

Furthermore, in nationwide class settlements, variations in state laws do not impact the typicality analysis as "concerns regarding variations in state law largely dissipate when a court is considering the certification of a settlement class."  *Sullivan v. DB Invs. Inc.*, 667 F.3d 273, 304 (3d Cir. 2011).  Differences in state law claims between the Named Plaintiffs and other Settlement Class Members, and in particular claims under different states' consumer protection statutes, should not preclude certification of the class for purposes of settlement.

### 4.   Plaintiffs will fairly and adequately represent the Settlement Class.

Adequacy "requires a determination of (1) whether the representatives' interests conflict with those of the class and (2) whether the class attorney is capable of representing the class" and the analysis "tend[s] to merge with the commonality and typicality criteria."  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 185 (3d Cir. 2001).  Adequacy will be found

unless there is a "legally cognizable conflict of interest." *Jordan v. Commonwealth Fin. Sys., Inc.*, 237 F.R.D. 132, 139 (E.D. Pa. 2006).

Here, each Named Plaintiff owns the same allegedly Damaged Cookware as the absent Settlement Class Members do, and have suffered the same injuries. Therefore, their interests are fully aligned with all other Class Members.

Second, Class Counsel meet the threshold set by Rule 23(g) as Class Counsel have extensive experience in prosecuting complex product defect and false advertising cases such as this one. *See* Exhibit 2.

### I.   The Requirements of Rule 23(b)(3) are Satisfied

Under Rule 23(b)(3) of the Federal Rules of Civil Procedure, the Court may certify a class action if "the court finds that the questions of law or fact common to class members predominate over any other questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

### 1.   Common Questions Predominate

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Sullivan v. DB Invs. Inc.*, 667 F.3d 273, 297 (3d Cir. 2011). The commonality inquiry is so similar to predominance that the "commonality requirement [is] incorporated into the more stringent Rule 23(b)(3) predominance requirement." *Id.* "[A]s long as a sufficient constellation of common issues binds class members together, variations in the sources and application of applicable law will not foreclose class certification." *Id.* at 301 (cleaned up). At its core, "[a] common scheme generates predominant legal and factual questions." *In re Nat'l Football League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 380 (E.D. Pa. 2015).

For the reasons identified above under the commonality analysis, the class satisfies the

predominance inquiry. Plaintiffs allege that Defendants perpetrated a common scheme involving the Defective Cookware, as well as the misrepresentations that the Cookware would be dishwasher safe.  Accordingly, Defendants' alleged conduct was common to all Settlement Class Members, and any claim that Settlement Class Members may bring will be premised upon the alleged Defect or the dishwasher-safe misrepresentations.  "Additionally, settlement itself allows common issues to predominate." *Id.* at 381.  Settlement makes "[v]ariations in state consumer protection laws [] irrelevant because a settlement would eliminate the principal burden of establishing the elements of liability under disparate laws." *In re Budeprion XL Mktg. & Sales Litig.*, MDL No. 2107, 2012 WL 2527021, at *8 (E.D. Pa. July 2, 2012).  Although the Settlement Class Representatives hail from some, but not all, states in the United States, this does not undermine the predominance analysis because the allegations about defective Cookware or the dishwasher-safe representations will underlie any claims brough by Settlement Class Members regardless of the state where they reside.

## 2.     Class Treatment of Plaintiffs' Claims is Superior

"The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533–34 (3d Cir. 2004) (internal citations omitted). "Class litigation is superior to other methods of adjudication when it would not be practicable to undertake the individualized inquiries necessary for the potential claims." *Griffin v. Zager*, No. 16-1234 (ES) (MAH), 2017 WL 3872401, at *5 (D.N.J. Sept. 1, 2017).  Several factors the Court may consider are "the class members' interests in individually controlling litigation, the extent, and nature of any litigation, the desirability, or understandability of concentrating the litigation, and the likely difficulties in managing a class action." *Abramson v. Agenta, LLC*, No. 18-615,

2021 WL 3370057, at *9 (W.D. Pa. Aug. 3, 2021).   However, when approving a class for settlement purpose, "the Court need not consider the final factor."   *Id.*

Class treatment is the superior method here.   Nothing suggests that individuals are more likely to file individual actions or settle and recover on individual actions. Class treatment will offer "prompt relief and avert[] the undue costs class members would incur in prosecuting their claims individually."   *Nyby v. Convergent Outsourcing, Inc.*, No. 15-886 (ES) (MAH), 2017 WL 3315264, at *6 (D.N.J. Aug. 3, 2017).   By contrast, compensation resulting from litigation is highly uncertain and may not be received before lengthy, and costly trial and appellate proceedings.   The Proposed Settlement removes the overwhelming and redundant costs of individual trials.   It also affords equal benefits and treatment to the Settlement Class.   Very few cases have been filed related to the present case, showing a reluctance of consumers to bring a "very small claim in relation to the cost of prosecuting a lawsuit."   *In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*, 333 F.R.D. 364, 376 (E.D. Pa. 2019).   Accordingly, superiority is met.

### J.   The Class Is Ascertainable

The Third Circuit requires that Plaintiffs show ascertainability as "an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3)."   *Marcus v. BMW of N.A., LLC*, 687 F.3d 583, 592–93 (3d Cir. 2012).   Plaintiffs demonstrate ascertainability by showing "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition."   *Somogyi v. Freedom Mortg. Corp.*, 495 F.Supp.3d 337, 347 (D.N.J. 2020).   Here, ascertainability is met because the objective criteria for defining the class is consumers who purchased D3, D5, and LTD Stainless Steel Cookware, and determining who purchased the

Cookware can be reliably and feasibly determined based upon Defendants' records and those of Defendants' authorized retailers, as is being done with the Notice Plan.

### K. Class Counsel's Applications for (i) Attorneys' Fees and Costs and (ii) Service Awards

Class Counsel have not been paid for their extensive efforts or reimbursed for litigation costs and expenses incurred. The Parties negotiated and agreed upon attorneys' fees and costs only after agreeing on all other material terms of the Settlement. The Parties have agreed that proposed Class Counsel may apply for an award of attorneys' fees, inclusive of costs and expenses, and Settlement Class Representative Service Payments, not to exceed $2,000,000 in the aggregate. The $2,000,000 will be paid by Defendants, separate and apart from any relief provided to the Settlement Class.  The Parties have also agreed that proposed Class Counsel will seek Settlement Class Representative Service Payments in an amount not to exceed $2,500.00, which is also separate and apart from any relief provided to the Settlement Class. Thus, any benefits provided to the Settlement Class will not be impacted by Defendant's payment of Service Awards and Attorneys' fees.

Class Counsel is not seeking an award of attorneys' fees at this time and, pursuant to the Settlement, will file a motion and supporting memoranda requesting an award of attorneys' fees, inclusive of costs, expenses, and Settlement Class Representative Service Payments within 60 days of entry of the Preliminary Approval Order. The Court, therefore, need not address attorneys' fees, costs, and service awards at this time.  *See In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 444 (3d Cir. 2016) ("The petition for a fee award will be submitted to the Court at a later date.  Objectors will then be able to present arguments as to why the requested award is improper, and the Court will have discretion to modify the award in whatever way it sees fit."); *In re Wawa, Inc. Data Sec. Litig.*, 2021 WL 3276148, at *13 (E.D. Pa. July 30, 2021) ("At

this time, the Court declines to further address attorneys' fees issues because a formal motion will

be filed at a later date, at which time the Court can fully analyze the request and any opposition to

it."); *McRobie v. Credit Prot. Assoc.*, No. 5:18-cv-00566, 2020 WL 6822970, at *5 (E.D. Pa. Nov.

20, 2020) ("[T]he Court defers a finding as to the propriety of the amount of requested attorneys'

fees in this case.").

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court:

1.     Preliminarily approve the Settlement Agreement;

2.     Certify the Rule 23(b)(3) Settlement Class (defined on page 17 above);

3.     Appoint Martha Geer, Harper Segui, and Rachel Soffin of Milberg Coleman

       Bryson Phillips Grossman, PLLC as Settlement Class Counsel;

4.     Appoint Angeion Group as the Claims Administrator; and

5.     Enter the proposed schedule in Paragraphs 10-17 of the Proposed Order, or

       another schedule, for notice, opt-out deadlines, objections deadlines, and dates for

       final approval briefing and hearing.


DATED:      July 29, 2022                          Respectfully submitted,

                                                   */s/* Harper T. Segui
                                                   Harper T. Segui*
                                                   Martha Geer*
                                                   **MILBERG COLEMAN BRYSON**
                                                   **PHILLIPS GROSSMAN, PLLC**
                                                   900 W. Morgan Street
                                                   Raleigh, NC 27603
                                                   T: (919) 600-5000
                                                   F: (919) 600-5035
                                                   hsegui@milberg.com
                                                   mgeer@milberg.com

Rachel Soffin*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: (865) 247-0080
rsoffin@milberg.com

*Counsel for Plaintiffs*

*Admitted pro hac vice.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of July 2022, a true and correct copy of the foregoing was served upon counsel of record via the Court's Electronic Case Filing system.

*/s/ Harper T. Segui*
Harper T. Segui