## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ALL-CLAD METALCRAFTERS, LLC, COOKWARE MARKETING AND SALES PRACTICES LITIGATION<br><br>This Document Relates to All Actions | MDL No. 2988<br>Master Case No. 2:21-mc-491-NR<br><br>*Electronically Filed* |

### PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS TO REPRESENTATIVE PLAINTIFFS

Rachel Soffin*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: (865) 247-0080
rsoffin@milberg.com


Harper T. Segui*
Martha Geer*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
900 W. Morgan Street
Raleigh, NC 27603
T: 919-600-5000
F: 919-600-5035
hsegui@milberg.com
mgeer@milberg.com


*Counsel for Plaintiffs*

 *Admitted *pro hac vice*.

# TABLE OF CONTENTS

I.  INTRODUCTION…………………………………………………………..…1

    A.  Relevant Procedural Background………..……………………………..…….....…. ....7

    B.  Class Counsel's Investigation……..……………………………………………11

    C.  Mediation and Subsequent Settlement Discussions……………………………12

    D.  The Preliminary Approval Order and Notice…………………………………14

II.  THE PROPOSED SETTLEMENT AND ITS VALUE……………………………...14

    A.  The Settlement Fund………………………………………………………...15

    B.  The Settlement Class…………………………………………………………16

    C.  Class Benefits……………………………………………………………16

III.  PLAINTIFFS' COUNSEL'S APPLICATION FOR (I) ATTORNEYS' FEES AND COSTS

    AND (II) SERVICE AWARDS………………………………………………18

    A.  Class Counsel Are Entitled to Recovery of Reasonable Attorneys' Fees and Expenses, as

      Provided by the Settlement Agreement………………………………….………..18

    B.  The Benefits Available to the Class Support the Requested Fee Award………………19

    C.  The Gunter and Prudential factors Support the Requested Fee Award………………..21

        1.  The Size of the Fund, Number of Persons Benefited, and Awards in Similar Cases

           Supports the Requested Award…………..…………………………………....21

        2.  The Absence of Objections Weighs in Favor of the Requested Award................23

        3.  The Skill and Efficiency of the Attorneys Involved Weighs in Favor of the

           Requested Reward…………………………………………………… ….23

        4.  The Complexity and Duration of the Litigation Weighs in Favor of the Requested

           Reward……………………………………………………………..… 24

        5.  The Risk of Nonpayment Was Substantial………………………………………26

6.    Class Counsel Have Devoted Substantial Time and Effort to this Action............27

7.    Value of Benefits Attributable to Class Counsel Relative to Other Groups..........29

8.    The Requested Fees Fall Within the Percentage Fee if Subject to Private Fee Agreement...................................................................................................29

9.    Innovative Terms of the Settlement Warrant the Requested Fees....................30

D.    A Lodestar Cross-Check Further Supports the Reasonableness of the Requested Fee Award.....................................................................................................30

E.    Class Counsel are Entitled to Be Reimbursed for Their Reasonable Litigation Expenses.33

F.    The Class Representatives Are Entitled to a Service Award................................34

IV.    CONCLUSION.....................................................................................................35

# TABLE OF AUTHORITIES

**Cases**

*Boeing Co. v. Van Gemert*,
   444 U.S. 472, 478 (1980)..................................................................................................20
*Bredbenner v. Liberty Travel, Inc.*,
   No. CIV.A. 09-1248 MF, 2011 WL 1344745, (D.N.J. Apr. 8, 2011)....................................36
*Brumley v. Camin Cargo Control, Inc.*,
   No. 08-1798, 2012 WL 1019337, (D.N.J. Mar. 26, 2012) ....................................................28
*Cleveland v. Whirlpool Corp.*,
   No. 0:20-cv-01906-WMM-JFD, 2022 WL 2256353,  (D. Minn. June 23, 2022) ..................34
*Craig v. Rite Aid Corp.*,
   No. 4:08-CV-2317, 2013 WL 84928, (M.D. Pa. Jan. 7, 2013).......................…...27, 28, 30, 31
*Deitz v. Budget Renovations & Roofing, Inc.*,
   No. 4:12-CV-0718, 2013 WL 2338496, at *5 (M.D. Pa. May 29, 2013)................................26
*Dewey v. Volkswagen Aktiengesellschaft*,
   558 F. App'x 191, 198 (3d Cir. 2014)..................................................................................21
*Edmonds v. Capital Accounts, LLC*,
   2020 WL 550611, at *3 (E.D. Pa. Feb. 4, 2020)..................................................................33
*Erie City. Retirees Ass'n v. City. of Erie*,
   192 F. Supp. 2d 369, 381 (W.D. Pa. 2002) (McLaughlin, J.)...............................................24
*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190, 195 n.1 (3d Cir. 2000)…………………………………………….20, 23
*Halley v. Honeywell Int'l, Inc.*,
   861 F.3d 481, 496 (3d Cir. 2017)........................................................................................20
*In re CertainTeed Fiber Cement Siding Litig.*,
   303 F.R.D. 199, 226 (E.D. Pa. 2014) .................................................................................35
*In re Diet Drugs*,
   582 F.3d 524, 541 (3d Cir. 2009)........................................................................................23
*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768, 821 (3d Cir.1995) ……………..…………………………………………21, 24
*In re Ikon Office Solutions, Inc.*,
   194 F.R.D. 166, 194 (E.D. Pa. 2000) .................................................................................31
*In re Linerboard Antitrust Litig.*,
   No. 98-5055, 2004 WL 1221350, at *19 (E.D. Pa. June 2, 2004) .........................................36
*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
   No. 08-CV-285-DMC, 2010 WL 547613, at *6 (D.N.J. Feb. 9, 2010....................................20
*In re Prudential Ins. Co.*,
   148 F.3d at 338-40………………………………………………………...……………23, 33
*In re Residential Doors Antitrust Litig.*,
   No. 94-3744, 1998 WL 151804, at *11 (E.D. Pa. Apr. 2, 1998) ..........................................36
*In re Rite Aid Corp. Secs. Litig.*,
   396 F.3d 294, 300 (3d Cir. 2005)……………………………………………….20, 23, 32

*In Re: Allura Fiber Cement Siding Litigation*,
No. 1:19-mn-02886- DCN, 2021 WL 2043531, at * 6 (May 21, 2021 D.S.C.) .......................33
*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*,
426 F.3d 694, 708 (3d Cir. 2005)...........................................................................................33
*Jackson v. Wells Fargo Bank, N.A.*,
136 F. Supp. 3d 687, 713 (W.D. Pa. 2015)……………………………………………..……21, 24
*Kanefsky v. Honeywell Int'l, Inc.*,
No. 18-cv-15536, 2022 WL 1320827, at *10 (D.N.J. May 3, 2022)…………………..…23, 24
*Kapolka v. Anchor Drilling Fluids USA, LLC*,
No. 2:18-cv-01007-NR, 2019 WL 5394751, (W.D. Pa. Oct. 22, 2019)……....26, 32, 33, 35, 36
*Lake Forest Partners, L.P. v. Sprint Commc'ns Co. L.P.*,
No. 2:12–cv–00999, 2013 WL 3048919,  (W.D. Pa. June 17, 2013) ......................................22
Li v. Aeterna Zenaris, Inc.,
 Civil No. 14-7081 (TJB) (D.N.J. June 1, 2021) ...................................................................35
*Mabry v. Hildebrandt*,
No. 14-5525, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015)..........................................24
*Mirakay v. Dakota Growers Pasta Co.*,
No. 13-cv-4429, 2014 WL 5358987, *11 (D.N.J. Oct. 20, 2014)………………....22, 24, 33, 35
*Report of the Third Circuit Task Force, Selection of Class Counsel*,
208 F.R.D. 340, 423 (2002) ....................................................................................................32
*Rossini v. PNC Fin. Servs. Grp., Inc.*,
2021 WL 3481458,  (W.D. Pa. June 26, 2020)………………..…21, 23, 24, 25, 27, 29, 31, 32
*Rouse v. Comcast Corp.*,
No. 14-1115, 2015 WL 1725721, at *12 (E.D. Pa. Apr. 15, 2015)…..…………...22, 29, 32, 33
*Varacallo v. Massachusetts Mut. Life Ins. Co.*,
226 F.R.D. 207, 259 (D.N.J. 2005) .........................................................................................36
*Yong Soon Oh v. AT & T Corp.*,
225 F.R.D. 142, 154 (D.N.J. 2004) .........................................................................................35
*Young v. Tri Cty. Sec. Agency, Inc.*,
No. CIV.A. 13-5971, 2014 WL 1806881, at *10 (E.D. Pa. May 7, 2014)..............................32

**Rules**

Federal Rule of Civil Procedure 23(h) ........................................................................................20

Plaintiffs Jean Greeff, Carol Egidio, Beira Montalvo, Miranda Murray, and Brandi Milford ("Plaintiffs" or "Class Representatives"), by and through undersigned counsel and pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Settlement Agreement and Release (ECF No. 71, Ex.1) and this Court's Preliminary Approval Order (ECF No. 78), hereby file this Application for Attorneys' Fees, Costs, and Service Awards to Representatives (the "Motion").

Plaintiffs respectfully request that this Honorable Court: (1) award Plaintiffs' Counsel attorneys' fees of $1,9ros27,694.04, which is an amount equal to 30.5% of the $6,310,000.00 Settlement value, and which represents a 1.59 lodestar multiplier; (2) award Plaintiffs' Counsel reimbursement of litigation costs of $59,805.56 and (3) award service awards of $2,500 to each of the five Settlement Class Representatives, for a total of $12,500.00.

As discussed in Plaintiffs' Motion for Preliminary Approval, while payment of fees and costs (including notice and administration costs) is part of the overall value of benefits, Defendants' payment of any fees and costs to Class Counsel, Service Awards, and notice and administration costs, is separate and apart from the benefits provided to the Settlement Class and will have no impact on the recovery received by Settlement Class Members.

## I.     INTRODUCTION

Plaintiffs, individually and on behalf of all others similarly situated, and Defendants, have entered into a Class Action Settlement Agreement to resolve Plaintiffs' claims that multi-ply cookware within All-Clad's D3, D5, and LTD Stainless-Steel Collections (the "Cookware") was misrepresented as "dishwasher safe." All-Clad marketed, labeled, and represented the Cookware as being, among other things, conveniently "dishwasher safe," and distributed it as such throughout the country to thousands of consumers. However, despite these representations, consumers

discovered that the Cookware began to prematurely fail as the edges became thin and/or sharp over time, and ultimately, too sharp to safely use (the "Damaged Cookware"). As discussed below, expert investigation conducted on behalf of Plaintiffs revealed that the Cookware suffers from a design defect that, when cleaned in a dishwasher, causes the layers of aluminum in the Cookware to deteriorate or erode, leaving thin and/or sharp stainless-steel edges, particularly along the rim of the Cookware ("Sharp Edges" or "Defect").

Notwithstanding the Parties' disagreement regarding the substantive allegations, they have been able to resolve this action. The Settlement is the product of hard-fought litigation and arm's-length negotiations, as well as substantial investigation and litigation, including:

(1) significant time communicating with Plaintiffs;

(2) investigation of facts and researching relevant law;

(3) the retention of knowledgeable and qualified experts who performed critical analyses regarding the alleged defect and damages at various stages of litigation, and who also assisted with discovery;

(4) the investigation, preparation and filing of multiple actions by Plaintiffs, including in the Northern District of California (*Mears v. All-Clad Metalcrafters, LLC, et al.*, Case No. 3:20-cv-02662-SI) ("*Mears* Action") on April 16, 2020; District of Massachusetts (*Egidio v. All-Clad Metalcrafters, LLC et al.*, Civil Action No. 1:20-cv-12025) ("*Egidio* Action") on November 11, 2020; the Southern District of Florida (*Montalvo v. All-Clad Metalcrafters, LLC et al.*, Civil Action No. 9:20-cv-82384) ("*Montalvo* Action") on December 22, 2020; and the Northern District of Georgia (*Murray et al. v. All-Clad Metalcrafters, LLC et al.*, Civil Action No. 1:21-cv-00095) ("Murray Action") on January 7, 2021;

(5) participation in multiple case management conferences in the Northern District of California in the *Mears* Action;

(6) briefing Defendants' Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings ("Motion to Transfer") before the Judicial Panel for Multidistrict Litigation ("JPML") filed on January 21, 2021, and opposing Defendants' Motion to transfer before the JPML;

(7) fully briefing Defendants' Motion to Dismiss in the *Egidio* Action (Egidio Action at ECF Nos. 27 and 28) while the Motion to Transfer was pending;

(8) fully briefing an omnibus motion to dismiss and strike class allegations in the *Mears, Montalvo*, and *Murray* Actions following transfer of this action by the JPML to this Court (*In re: All-Clad Metalcrafters, LLC, Cookware Marketing and Sales Practice Litig.*, MDL No. 2988, No. 2:21-mc-491-NR) ("All-Clad MDL") at ECF Nos. 48-49, 51 and 56;

(9) negotiating and filing a Joint Motion for Protective Order, Proposed Rule 26(f) Discovery Plan, and Joint Motion for Discovery governing hard copy documents as well as ESI in order to continue engaging in discovery following transfer to this Court (All-Clad MDL at ECF Nos. 36-37, 40-41, 45-46);

(10) significant fact discovery, which aided the resolution of this action, and included serving and responding to interrogatories and requests for production, obtaining third-party retailer discovery, and reviewing and analyzing important documents and data;

(11) filing multiple joint status reports with the Court (All-Clad MDL at ECF Nos. 25, 44, 50, 52, 57, 58, 60, 63-64, 69);

(12) two days of mediation, on October 13-14, 2021, during which time the parties were unable to resolve this matter, resulting in continued litigation;

(13) further mediation following several additional months of litigation, on February 16, 2022, at which time the parties were able to successfully resolve the substantive terms of the Settlement Agreement; and

(14) continued negotiation of the finer details of the Settlement Agreement for an additional five months.

As alleged in the *Mears* First Amended Complaint, All-Clad is one of the largest cookware companies in the United States and sells many units of Cookware a year online and through its well-known authorized retailers. FAC at ¶ 1. All-Clad uniformly marketed, labeled, and represented the Cookware as being conveniently dishwasher safe. *Id.* at ¶ 5.

The Cookware subject to this litigation are among All-Clad's top selling products. *Id.* at ¶ 8. The cost of a single piece of the Cookware ranges between $80.00 and $500.00 MSRP, and the cost of an entire set is priced as high as $1,600.00 MSRP. *Id.* at ¶ 7. All-Clad has been able to charge these prices because, over the course of four decades, it has gained the trust of consumers who reasonably believe that All-Clad products are made with quality materials, the products can be used safely as intended and marketed, and All-Clad would stand by its warranty promise to provide defect-free Cookware that is actually dishwasher safe, as represented and warranted. *Id.* at ¶¶ 2, 64. However, as Plaintiffs contended, the Cookware suffers from a Defect and is not, in fact, dishwasher safe.

The Cookware at issue is multi-ply, bonded cookware, with alternating layers of stainless steel and aluminum. *Id.* at ¶ 34. The stainless steel forms the base of the Cookware, as well as a very thin top layer, which measures at .002 of an inch (approximately half of a human hair in thickness). *Id.* at ¶¶ 34, 43. Aluminum is constructed in between the layers of stainless steel. *Id.* at ¶ 34. The second layer of aluminum is much thicker than the top layer of stainless steel. *Id.* at ¶

44. When immersed with the stainless steel in the dishwashing detergent, the aluminum and steel form a galvanic couple that produces accelerated etching and corrosion of the aluminum. *Id.* As the aluminum corrodes away from the layers of stainless steel, what remains at the top is the 0.002 of an inch thin stainless steel layer protruding above the aluminum layer of the Cookware. *Id.* Consequently, the thin, sharp top layer of stainless steel becomes an unreasonably dangerous condition for consumers trying to handle the Cookware, including as it is intended to be used. *Id.*

All-Clad's claims that the Cookware was dishwasher safe were pervasive, appearing on Cookware packaging, in Use and Care Manuals and Instructions, and throughout All-Clad's website (including in Stainless Steel Cookware brochures, in Stainless Steel FAQs, and on individual Cookware piece and multi-piece specifications). *Id.* at ¶ 39. Examples of All-Clad's "dishwasher safe" representations, include:

- "Care and Use: CLEANING: Dishwasher Safe."

- "The 'Stainless Steel' collection is completely dishwasher-safe. It is recommended that before you use your Stainless Steel All-Clad you wash it in the dishwasher first to remove any manufacturing residues and this will help to keep it shiny."

- "[]All-Clad's d5 Brushed Stainless Steel Collection: Dishwasher safe"

- "Made in the USA, D3 Stainless cookware offers warp-resistant strength and dishwasher safe convenience, plus it can be used on any cooktop, including induction."

*Id.* at ¶ 192.

Each of the Plaintiffs—including Jean Greeff, Carol Egidio, Miranda Murray, Brandi Milford, and Beira Montalvo—became interested in purchasing new dishwasher-safe cookware for cooking at home. *Id.* ¶ 71 (ECF No. 1); Murray Class Action Complaint ("Murray CAC") ¶¶ 70, 79 (ECF No. 1); Montalvo Class Action Complaint ("Montalvo CAC") ¶ 69 (ECF No. 1); Egidio Class Action Complaint ("Egidio CAC") ¶ 69 (ECF No. 1). Each Plaintiff purchased their Cookware in reliance on All-Clad's dishwasher-safe representations. Greeff FAC ¶ 71; Murray

CAC ¶¶ 70, 79–80; Montalvo ¶ 69; Egidio CAC ¶ 69. Each Plaintiff used the Cookware as intended, cleaning it in the dishwasher in accordance with the use and care instructions. Greeff FAC ¶ 72; Murray CAC ¶¶ 71, 81; Montalvo CAC ¶ 70; Egidio CAC ¶ 71. Over time, each Plaintiff noticed that the Cookware began to deteriorate and that the Cookware's edges became sharp to the touch. Greeff FAC ¶¶ 72–73; Murray CAC ¶¶ 73, 82; Montalvo ¶ 71; Egidio CAC ¶ 73.

Expert testing conducted on behalf of Plaintiffs revealed that every piece of the Cookware contains the alleged Defect. Greeff FAC ¶¶ 41–48. Thus, Plaintiffs alleged that All-Clad's decision to market, label, and promote the Cookware as dishwasher safe (when it is not), supports Plaintiffs' allegations regarding Defendants' deceptive and unlawful conduct in the marketing and sale of the Cookware. *Id.* at ¶¶ 53–56.

Plaintiffs asserted that All-Clad's knowledge of the Defect is established through years of consumer complaints about the Cookware deteriorating in the dishwasher to the point the Cookware developed sharp edges together with All-Clad's responses to those complaints. *Id.* ¶¶ 78–90. Additionally, as alleged, when All-Clad received warranty claims based on the Defect, it replaced the defective Cookware with equally defective Cookware, improperly denying the warranty claims, and often misrepresenting to consumers that citrus dish pods and citrus detergents caused the Cookware's deterioration and sharp edges. *Id.* at ¶ 80. Plaintiffs contended that All-Clad's reported responses to customer complaints demonstrate that not only was All-Clad aware of the dangerous and potentially harmful Defect, but it also attempted to actively conceal the dangerous Defect from consumers and otherwise failed to honor its Warranty. *Id.* at ¶ 83.

Although All-Clad has acknowledged to certain consumers making warranty claims that the deterioration can occur when using a dishwasher (attributing it to citrus-based detergents), Plaintiffs claimed that it failed to issue a recall, warn consumers, or take any other affirmative

steps to correct the problem in the Cookware already in the stream of commerce prior to Plaintiffs' initiation of their lawsuits. *Id.* at ¶ 103. Nor did All-Clad change its packaging, brochures, use and care instructions, website representations, or authorized retailer descriptions and specifications until after litigation had commenced. *Id.* After it was sued in California, All-Clad began removing "dishwasher-safe" representations from its website. It now, in certain locations on its website, recommends that consumers "Hand wash to maintain the pan's beauty." *Id.* ¶ 7. Accordingly, these representations formed the basis for Plaintiffs' allegations.

### A. Relevant Procedural Background

On April 16, 2020, the first Class Action Complaint was filed in the Northern District of California (*Mears v. All-Clad Metalcrafters, LLC, et al.*, Case No. 3:20-cv-02662-SI) against All-Clad alleging that the Cookware was misrepresented as dishwasher-safe, when it was instead designed, manufactured, distributed, marketed, and sold with construction that deteriorates during dishwasher cleaning. Once the *Mears* action was filed, the Parties filed a Rule 26(f) Report, negotiated several case management orders, and participated in multiple case management conferences in the Northern District of California. Exhibit 1 at ¶ 15 (Joint Declaration of Proposed Class Counsel in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Litigation Costs, and Service Awards) ("Joint Decl.").

Following the first case management conference, the Parties agreed to attempt early resolution of the case through a formal mediation. *Id.* On October 13-14, 2020, the Parties mediated with the Honorable (Ret.) Richard Kramer with JAMS. *Id.* Following the Parties' unsuccessful initial mediation, Defendants served an Answer to the *Mears* Complaint (*Mears* Action at ECF No. 15), and the Parties began engaging in formal discovery. *Id.* at ¶ 16.

Subsequently, related actions were filed by Plaintiffs in the District of Massachusetts (*Egidio* Action) on November 11, 2020; the Southern District of Florida (*Montalvo* Action) on December 22, 2020; and the Northern District of Georgia (*Murray* Action) on January 7, 2021.

On January 21, 2021, Defendants filed a Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings ("Motion to Transfer") before the JPML, seeking to transfer the four actions to the Western District of Pennsylvania. JPML ECF No. 1. Plaintiffs filed an opposition brief, arguing that Proposed Class Counsel were counsel of record for all actions, and that this litigation could replicate the success Proposed Class Counsel previously had in informally coordinating similarly situated litigation. JPML ECF No. 9.

During the pendency of Defendants' Motion to Transfer, litigation in each of the four actions continued. Exhibit 1, Joint Decl. at ¶ 19. In *Mears*, the Parties briefed Defendants' Motion to Stay the Action Pending Likely Transfer by the JPML *Mears* Action at ECF Nos. 52, 55, and 57. Plaintiff Mears opposed Defendants' Motion to Transfer; however, the Motion to Transfer was granted (*id.* at ECF No. 59). Concurrently, in *Egidio*, Defendants filed a Motion to Stay the Action, as well as Motions to Dismiss and to Strike Complaint. *Egidio* Action at ECF Nos. 11, 19, and 16. Plaintiff Egidio filed an opposition brief to the Motion to Stay the Action. *Id.* at ECF No. 14. Defendants' Motion to Stay was denied in the *Egidio* Action (*id.* at ECF No. 15), and briefing on the Defendants' Motions to Dismiss and Strike Class Allegations was completed in the District of Massachusetts. *Id.* at ECF Nos. 27 and 28.

On March 25, 2021, the Parties appeared before the JPML and presented arguments on Defendants' Motion to Transfer. Following more than a year of litigation, on March 31, 2021, the Parties received the JPML's Order consolidating the four actions and transferring the cases to the

Western District of Pennsylvania. *In re All-Clad Metalcrafters, LLC, Cookware Mktg. & Sales Pracs. Litig.*, 532 F. Supp. 3d 1411 (J.P.M.L. 2021).

Upon consolidation of the multidistrict litigation in the Western District of Pennsylvania, the undersigned Proposed Class Counsel filed the Unopposed Motion to Appoint Counsel Martha Geer, Harper Segui, and Rachel Soffin as Interim Co-Lead Counsel (ECF No. 22) on May 20, 2021, which was granted by the Court on June 24, 2021 (ECF No. 34).

On June 23, 2021 (ECF No. 32), the Court held an Initial Status Conference in order to assess the status of discovery. Subsequently, after significant negotiation, the Parties filed the Joint Motion for Protective Order on July 1, 2021 (ECF No. 36), the Proposed Rule 26(f) Discovery Plan on July 12, 2021 (ECF No. 40), and the Joint Motion for Discovery governing hard copy documents as well as ESI on August 13, 2021 (ECF No. 45) in order to continue engaging in discovery.

The Parties continued the formal discovery initiated in the *Mears* Action, including substantial production of documents. Exhibit 1, Joint Decl., at ¶ 25. Plaintiffs served Defendants with multiple sets of discovery, including targeted Requests for Admission. *Id.* Plaintiffs also served subpoenas on All-Clad authorized retailers, negotiating the scope and timing of those productions. *Id.* As indicated above, Plaintiffs continued to consult with their experts during the various discovery stages to ensure discovery was thorough and would aid the experts in producing reports. *Id.* at ¶26.

Since the initiation of the consolidated matter, the Parties have filed 10 Joint Status Reports (May 25, 2021 (ECF No. 25), July 30, 2021 (ECF No. 44), August 31, 2021 (ECF No. 50), September 30, 2021 (ECF No. 52), October 29, 2021 (ECF No. 57), November 30, 2021 (ECF No.

58), December 30, 2021 (ECF No. 60), January 31, 2022 (ECF No. 63), February 17, 2022 (ECF No. 64), May 23, 2022 (ECF No. 68)).

The Parties filed a Stipulation of Dismissal of Plaintiff Mears on August 25, 2021, and substituted Plaintiff Greeff in the *Mears* Action as the California Class Representative (ECF No. 47). Shortly thereafter, the Parties engaged in an additional round of extensive briefing of Defendants' arguments for dismissal of all Complaints. Specifically, Defendants filed a Motion to Dismiss and to Strike the Class-Action Allegations on August 27, 2021 (ECF No. 48), to which Plaintiffs responded on September 29, 2021 (ECF No. 51), and Defendants replied on October 14, 2021 (ECF No. 56).

While litigation continued, the Parties agreed to mediate again and selected the Honorable Wayne R. Andersen (Ret.), an experienced class action neutral with JAMS. In the interim, the Court scheduled a hearing for January 25, 2022, on Defendants' various pending Motions. The Parties filed a Joint Motion to Reschedule Hearing given the progress made during settlement negotiations and in anticipation of the upcoming mediation (ECF No. 61). As detailed below, on February 16, 2022, the Parties mediated and were able to successfully resolve the substantive terms of the Settlement Agreement.

If the Parties had not negotiated this Settlement, the Parties would have had argument set before the Court over the pending Motion to Dismiss and to Strike the Class-Action Allegations. Although Plaintiffs were confident they would prevail on the majority of their arguments, the outcome of the Motion was uncertain. Depending on the ruling, further rounds of amending the operative Complaint and additional Motion to Dismiss briefing would likely have arisen, extending the amount of time before Plaintiffs and the Settlement Class Members obtained any relief and potentially risking the loss of some or all of that relief. Similarly, the Parties would have to

continue to pay expert witnesses and technical consultants, as well as expend substantial time devoted to briefing Plaintiffs' motions for class certification, *Daubert* motions, and summary judgment motions, preparing for and conducting trial, post-trial motion practice, and likely appeals (including potentially interlocutory appeals). Absent a settlement, the final resolution of this litigation through the trial process would undoubtedly take years of protracted, adversarial litigation and appeals, which would delay relief to tens of thousands of Settlement Class Members. Thus, continuing to litigate the multidistrict litigation would require much of the Parties' resources and would delay relief for Settlement Class Members likely for several years (assuming Plaintiffs prevailed at each procedural stage).

### B. Class Counsel's Investigation

Class Counsel spent many hours investigating the claims of several potential plaintiffs against All-Clad. Exhibit 1, Joint. Decl., at ¶ 10. Class Counsel performed research on All-Clad, its Cookware, the warranties, care, and consumer complaints. *Id.* Additionally, numerous consumers were interviewed, and documents collected to gather information about the Cookware, the alleged Defect, All-Clad's actions regarding the alleged Defect, and its knowledge of that Defect. *Id.*

Further, Class Counsel worked closely with well-qualified materials and metallurgy experts who spent many hours investigating the Cookware, including research of the product, specifications, industry standards, and alternative feasible designs. *Id.* at ¶ 11. As part of the investigation, the engineers collectively performed dishwasher testing, microscopic analysis, and documented the Cookware materials and construction. *Id.* The engineers also provided ongoing assistance to Class Counsel during litigation, including formulation of discovery questions. *Id.* at ¶ 26.

The expert investigation and analysis were essential to Class Counsel's ability to identify the alleged Defect and analyze the nature of All-Clad's conduct and potential claims and remedies. *Id.* at ¶¶ 9-12 Class Counsel thus spent a significant amount of time analyzing information regarding the alleged Defect. *Id.* Class Counsel also expended significant resources researching and developing the legal claims at issue. *Id.* at ¶ 9-12. Class Counsel is familiar with the claims as they have litigated and resolved cases with similar product defect and false advertising factual and legal issues. *Id.* at Ex. A (resumes of Class Counsel Martha Geer, Harper Segui, and Rachel Soffin). Class Counsel has experience in understanding the remedies and damages at issue, as well as what information is critical in determining class membership. *Id.*

## C. Mediation And Subsequent Settlement Discussions

As referenced above, the Parties began preliminary settlement discussions more than twenty-one months ago, in October of 2020. Exhibit 1, Joint Decl. at ¶ 15. Specifically, early in the *Mears* Action the Parties' mediated with Judge Kramer. *Id.* Prior to mediation, the Parties exchanged requests for information pursuant to Fed. R. Evid. 408. *Id.* The Plaintiffs also made a detailed settlement demand and provided preliminary expert work in support of that demand. The Parties also provided detailed mediation statements to Judge Kramer, which were exchanged prior to mediation.

As a result of extensive expert investigation, as well as independent investigation of Class Counsel regarding the dishwasher-safe representations and the alleged Defect, Plaintiffs and Proposed Class Counsel entered these settlement negotiations with substantial information about the nature and extent of the challenged practices, and the merits of the legal claims and factual allegations. *Id.* at ¶¶ 9-12. Plaintiffs and Class Counsel also had the ability to review key documents in this matter, including significant discovery from Defendants. *Id.* at ¶¶18, 25-26.

Review of this information positioned Proposed Class Counsel to evaluate with confidence the strengths and weaknesses of Plaintiffs' claims and prospects for success at class certification, summary judgment, and trial. *Id.*

The Parties attended two full-day mediation sessions (on October 13 and 14, 2020) with Judge Kramer. *Id.* at ¶ 16. While the Parties were able to make some progress toward settlement of this pending litigation, the Parties were unable to fully resolve this matter at that time. *Id.* Following the unsuccessful mediation, litigation continued. *Id.* at ¶ 16-27.

After consolidation of the various actions into the multidistrict litigation in the Western District of Pennsylvania, and continued litigation in this Court, the Parties scheduled a second round of formal mediation on February 16, 2022, with Judge Andersen. *Id.* at ¶ 29. Prior to the mediation, the Parties spent months negotiating the terms of the settlement agreement, and regularly participating in Zoom conferences to advance settlement discussions. *Id.* at ¶ 28.

While many issues were negotiated prior to the February 16th mediation, the mediation took another full day that went late into the night and included attendees participating via Zoom from France to resolve further substantive issues, including establishment of the Common Fund. *Id.* at ¶ 29. During this round of formal mediation, the Parties were able to make substantial progress toward settlement of this pending litigation, and the Parties reached an agreement on material terms and the Common Fund. *Id.*

Following the February 16th mediation, the Parties continued to negotiate the details of the Settlement Agreement over the next five months, including the products that could be exchanged, the release, the selection of the claims administrator, the notice plan, and a schedule. *Id.* at ¶ 30. To finalize the Settlement Agreement, the Parties had regular Zoom conferences and continued to

exchange redlines and drafts of documents. *Id.* Accordingly, the terms of the Settlement Agreement were negotiated at arm's length and always actively.

### D.  The Preliminary Approval Order And Notice

On August 25, 2022, this Court granted preliminary approval of the Settlement. ECF No. 78. In the Preliminary Approval Order, the Court appointed Harper Segui, Martha Geer, and Rachel Soffin of Milberg Coleman Bryson Phillips Grossman, PLLC, as Settlement Class Counsel, and Plaintiffs Jean Greeff, Carol Egidio, Beira Montalvo, Miranda Murray, and Brandi Milford as Settlement Class Representatives.  *Id*. at ¶¶ 5-6.  The Court also preliminarily found that the Settlement met the numerosity, commonality, predominance, typicality, adequacy, and superiority requirements of Rule 23 of the Federal Rules of Civil Procedure, and that it "appears that extensive and costly investigation, research, and discovery have been conducted such that the attorneys for the parties are reasonably able to evaluate the benefits of settlement, which will avoid substantial additional costs to the parties and reduce delay and risks associated with this action. It further appears that the Settlement has been reached as a result of intensive, arm's-length negotiations using experienced third-party neutrals." *Id.* at ¶ 7. The Court also approved the form and content of the Settlement Class Notice and Claim forms, and appointed Angeion Group, LLC as the Claims Administrator.  *Id.* at ¶¶ 8, 10.  The Notice program is being timely implemented in accordance with the Preliminary Approval Order.

## II.  THE PROPOSED SETTLEMENT AND ITS VALUE

The Settlement Agreement provides for the establishment of a Common Fund up to $4,000,000.00, with an additional $2,000,000.00 for service awards and Plaintiffs' Attorneys Fees and Costs, as well as the additional costs of notice and administration which are currently estimated at $310,000.00, for a total of up to $6,310,000.00 paid by Defendant.

The Settlement Benefits provide three options for Settlement Class Members whose Cookware has experienced "Sharp Edges" and another option for Settlement Class Members whose Cookware has been discarded or not experienced "Sharp Edges."

In addition to the monetary value of the Proposed Settlement, All-Clad has removed and will continue to ensure its "dishwasher safe" representations are removed from Cookware marketing and in the marketplace.

The Proposed Settlement offers a substantial recovery to the Settlement Class and does so through a claims process that does not impose undue burden on the Settlement Class. The Settlement Agreement treats all Members of the Settlement Class fairly and equally as the recovery is based upon whether Class Members are in possession of the Damaged Cookware or not, and the Proposed Settlement gives Class Members choices that are equal but also respects that consumer preferences may differ after Class Members have learned about the alleged Defect.

A.     The Settlement Fund

Defendants will establish a Common Fund that will provide for the refunds available to Class Members under the Damaged Cookware benefits. No other aspects of the Proposed Settlement will be drawn from the Settlement Fund, meaning all other expenses incurred by Defendants under the Proposed Settlement are in addition to the monetary value allocated toward the Common Fund, as follows:

1.     A $3,000,000 fund will be created 30 days after the Claims Administrator has engaged in the process of determining the number of claims where the Cookware submitted constitutes Damaged Cookware, which will be used to reimburse consumers who choose to return the Damaged Cookware to All-Clad in exchange for new D3/D5 cookware of the same type/style

and also claim a $75 refund (discontinued LTD cookware will be replaced with similar D3 cookware);

2. Each refund for Damaged Cookware will be $75;

3. If the amount of refund claims totals less than $3,000,000, All-Clad will create a fund in the actual amount of all such claims;

4. If the amount of refund claims exceeds $3,000,000, All-Clad will add as much money as needed to pay such claims, up to an additional $1,000,000, for a total of $4,000,000; and

5. If the total amount of refund claims exceeds $4,000,000, the amount paid on each claim will be reduced *pro-rata.*

**B.     The Settlement Class**

In the Preliminary Approval Order, the Court preliminarily certified the following Settlement Class:

> All persons in the United States, including Puerto Rico and the District of Columbia, who, between January 1, 2015, and the date of the filing of the Motion for Preliminary Approval, have purchased All-Clad D3, D5, or LTD Cookware who do not exclude themselves from (opt-out of) the class.

Excluded from this Settlement Class are:

> Defendants, as well as Defendants' affiliates, employees, officers, and directors, attorneys, agents, insurers, and the attorneys representing Defendants in this case; the judges and mediators to whom this case is assigned and their immediate family members; all persons who request exclusion from (opt-out of) the Settlement; anyone claiming personal injury, property damage (other than to their Cookware), or subrogation; and all persons who previously released any claims encompassed in this Settlement.

ECF No. 78, Preliminary Approval Order, at ¶¶ 1-2.

Plaintiffs and All-Clad agree that the Settlement Class includes tens of thousands of members.

**C.     Class Benefits**

Settlement Class Members fall into two distinct groups with different options for relief, each of which is of equal value. Settlement Class Members who are in current possession of the Damaged Cookware are entitled to select one of three of the following options:

- Option 1.  Settlement Class Members electing this Option will submit the Damaged Cookware to All-Clad.  In exchange, they will receive replacement Cookware of the same type/style and apply for a $75 refund;

- Option 2.  Settlement Class Members electing this Option will submit the Damaged Cookware to All-Clad.  In exchange, they will receive either (i) Hard Anodized (HA1) five-piece fry-pan set (SKU 2100122734) or (ii) Essentials Hard Anodized Nonstick thirteen-piece cookware set (SKU 2100120788);

- Option 3.  Settlement Class Members electing this Option will submit the Damaged Cookware to All-Clad.  In exchange, they will apply for a future credit of 50% off purchases, up to $1,200, on All-Clad's website.

All-Clad will cover all shipping costs, including both the shipment of the Damaged Cookware from the Settlement Class Members as well as the shipment of any cookware under Options 1 or 2 to Settlement Class Members.

Settlement Class Members who no longer possess the Damaged Cookware or who have the Cookware but whose Cookware has not yet manifested sharp edges are entitled to the following:

- Alternate Option.  Settlement Class Members electing this Option will submit a claim, with proof of purchase, for a future purchase credit of 35% off purchases, up to $750.00, on any product(s) on All-Clad's website. Proof of purchase can include a store receipt, invoice, order confirmation, credit card receipt, canceled check, or other document(s) demonstrating that you purchased Cookware during the class period.

All-Clad also affirms that it has completed packaging changes to remove "dishwasher-safe" representations from all of the Cookware packaging and labeling and has also completed removal of the "dishwasher-safe" representations on the All-Clad website and any other promotional and marketing materials.  All-Clad has notified its authorized retailers of the removal of the "dishwasher-safe" representations on the All-Clad website and any other promotional and

marketing materials and is actively working to complete re-notification instructing retailers to remove "dishwasher-safe" representations from floor models and other marketing materials. The purpose of including this affirmation in the Proposed Settlement is to ensure that All-Clad, and any of the Cookware's associated advertising and marketing materials, no longer represent to consumers that the Cookware is dishwasher safe.

## III.   PLAINTIFFS' COUNSEL'S APPLICATION FOR (I) ATTORNEYS' FEES AND COSTS AND (II) SERVICE AWARDS

### A.  Class Counsel Are Entitled to Recovery of Reasonable Attorneys' Fees and Expenses, as Provided by the Settlement Agreement

"Federal Rule of Civil Procedure 23(h) provides [that] in a certified class action, the court may award reasonable attorney's fees that are authorized by law or by the parties' agreement." *Rossini v. PNC Fin. Servs. Grp., Inc.*, No. 2:18-cv-1370-NR, 2021 WL 3481458, at *17 (W.D. Pa. June 26, 2020) (quoting *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 496 (3d Cir. 2017)) (cleaned up).

It is well-settled that plaintiffs' attorneys in a class action lawsuit may petition the court for compensation for any benefits to the class that result from the attorneys' efforts. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "In assessing attorneys' fees, courts typically apply either the percentage-of-recovery method or the lodestar method. The percentage-of-recovery method is generally favored in common fund cases, such as this case, because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure." *In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) (internal quotation marks omitted). Under the common fund doctrine, "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing*, 444 U.S. at 478.

**B. The Benefits Available to the Class Support the Requested Fee Award.**

Under the law of the Third Circuit, district courts have considerable discretion in determining the appropriate percentage-of-the-fee recovery in common fund cases. *See Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190, 195 n.1 (3d Cir. 2000). An award of attorneys' fees and the method used to determine that award are "within the discretion of the court," *In re Merck & Co., Inc. Vytorin ERISA Litig.*, No. 08-CV-285-DMC, 2010 WL 547613, at *6 (D.N.J. Feb. 9, 2010).

Courts in this Circuit have found that a fee award may be based on the total monetary relief available to the class and paid by a defendant, including attorneys' fees and costs, and notice and administration costs. *Jackson v. Wells Fargo Bank, N.A.*, 136 F. Supp. 3d 687, 713 (W.D. Pa. 2015) (in assessing value of common fund, finding total benefits available to the class included attorneys' fees, and notice and administration costs, in addition to funds available to pay class members, holding "[t]hese are sums that class members would otherwise be responsible for and therefore are part of the total benefit to the class"). The rationale behind this percentage of the fund method applies in situations where, as here, defendants are paying the fees, because although seemingly independent, they are being paid from the same source. Thus, where attorneys' fees are separately negotiated and will be paid in addition to relief awarded to the class, it is appropriate to apply the "percentage of the fund" approach to the total amount being paid by a defendant for settlement to determine if a requested fee award is reasonable. *See Dewey v. Volkswagen Aktiengesellschaft*, 558 F. App'x 191, 198 (3d Cir. 2014) ("Granted, this case does not involve a true common fund because [defendant] is paying the fee out of its own pocket and not through the reimbursement fund. However, where the reality is that the fund and the fee are paid from the same source—in this case, [defendant]—the arrangement 'is, for practical purposes, a constructive

common fund,' and courts may still apply the percent-of-fund analysis in calculating attorney's fees." (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995)); *see also Rossini*, 2021 WL 3481458, at *18 (W.D. Pa. June 26, 2020) (in class action where attorneys' fees were paid separate from common fund, finding proposed fee should be based on total amount paid by defendant for settlement, including fees and costs, which would otherwise be borne by plaintiffs and are thus part of the total "pot" available to the class (citing *Lake Forest Partners, L.P. v. Sprint Commc'ns Co. L.P.*, No. 2:12–cv–00999, 2013 WL 3048919, at *2 (W.D. Pa. June 17, 2013) (Schwab, J.) ("[I]t is appropriate to base the percentage on the gross cash benefits available for class members to claim, plus the additional benefits conferred on the class by the Settling Defendants' separate payment of attorney's fees and expenses, and the expenses of administration.")); *Mirakay v. Dakota Growers Pasta Co.*, No. 13-cv-4429, 2014 WL 5358987, *11 (D.N.J. Oct. 20, 2014) (in class action involving allegations of deceptive marketing and advertising of pasta product, approving fee of $2,900,000, where settlement included a $5,000,000.00 cash fund available to the class and requested fee of $2,900,000, for a total of $7,900,000.00, finding "[a]lthough the settlement here is not strictly a common fund because the fees were separately negotiated and will be paid apart from money awarded to the class, courts apply many of the same principles as are applied when analyzing a common fund. . . , As such, the Court will analyze common fund factors to determine the reasonableness of the fees requested herein.").

Thus, although attorneys' fees, expenses and service awards ($2,000,000.00) and the cost of notice and administration ($310,000.00) will be paid by separately and additionally by Defendants (and will not be deducted from the up to $4,000,000.00 payments available to Class

Members), it is appropriate to include these amounts in assessing the value of the Settlement, which is $6,310,000.00. *See Lake Forest Partners. L.P.*, 2013 WL 3048919 at *2.

### C. The *Gunter and Prudential* factors Support the Requested Fee Award.

The Third Circuit has identified the following factors, referred to as the *Gunter* and *Prudential* factors, for the Court to consider in determining whether a fee award is reasonable under the percentage-of-recovery analysis: "(1) the size of the fund created and the number of beneficiaries; (2) the presence or absence of substantial objections by members of the class to the settlement terms or the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the time devoted to the case by plaintiffs' counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and; (10) any innovative terms of settlement." *Rossini*, 2020 WL 3481458, at *18 (citing *In re Diet Drugs*, 582 F.3d 524, 541 (3d Cir. 2009); *Gunter*, 223 F.3d at 195 n.1 (identifying factors 1-7); *In re Prudential Ins. Co.*, 148 F.3d at 338-40 (identifying factors 8-10)). "These fee award factors 'need not be applied in a formulaic way ... and in certain cases, one factor may outweigh the rest.'" *In re Rite Aid Corp.*, 396 F.3d at 301 (quoting *Gunter*, 223 F.3d at 195 n.1). "Several of these factors overlap considerably with those already considered by the Court in approving the Settlement as fair, reasonable, and adequate." *Kanefsky v. Honeywell Int'l, Inc.*, No. 18-cv-15536, 2022 WL 1320827, at *10 (D.N.J. May 3, 2022).

### 1. The Size of the Fund, Number of Persons Benefited, and Awards in Similar Cases Supports the Requested Award.

"The first *Gunter* factor requires the Court to look at the size of the fund created by the settlement agreement and the number of beneficiaries in the class. Relatedly, the seventh *Gunter* factor calls for the Court to compare the size of the proposed fee award to the size of awards in cases involving similar common funds." *Rossini*, 2020 WL 3481548, at *18. Here, both the first and seventh *Gunter* factors support approval of the requested fee award.

As described above, the Settlement generated a cash fund of up to $4,000,000.00, as well as $2,000,000.00 for attorneys' fees and costs and Class Representative service awards, and $310,000.00 for notice and administration costs, for a total of $6,310,000.00. Further, Plaintiffs and All-Clad agree that the Settlement Class includes tens of thousands of members.

For a fund of this size, a percentage award of 30.5% falls squarely within the range of awards found reasonable by courts in the Third Circuit, which have found that fees ranging from 20-45% of the common fund are appropriate. *Mabry v. Hildebrandt*, No. 14-5525, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015); *Kanefsky*, 2022 WL 1320827, at *11 (citing *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995)); *see also Rossini*, 2020 WL 3481458, at *19 ("[F]ee awards ranging from thirty to forty-three percent have been awarded in cases with funds ranging from $400,000 to $6.5 million, funds which are comparatively smaller than many.") (quoting *Erie City. Retirees Ass'n v. City. of Erie*, 192 F. Supp. 2d 369, 381 (W.D. Pa. 2002) (McLaughlin, J.) (collecting cases of fee awards in consumer class actions ranging from 33-35%); *Mirakay*, 2014 WL 5358987, at *12 (in class action involving allegations of deceptive marketing and advertising of pasta product, approving fee of $2,900,000, where settlement included a $5,000,000.00 cash fund available to the class, for a total of $7,900,000.00, stating "[a]s an initial matter, the requested attorneys' fees are separate and apart from the settlement award, but even if they were added together to form the common fund,

Plaintiffs' requested fee award would be approximately 36.8% of the mere cash value of the fund."); *Jackson*, 136 F. Supp. 3d at 713 (in class action involving force-placed insurance, calculating total settlement fund at $5.8 million, which included $2.8 million paid directly to settlement class members, along with $1.5 million in attorneys fees and $1.5 million for notice and administration costs, and approving fee of $1.5 million, which represented 25.6% of total settlement fund). As the *Mirakay* Court noted: "Attorneys' fees in the 30% range are not uncommonly awarded in the Third Circuit, and courts in this Circuit have awarded fees of more than 30%." 2014 WL 5358987, at *12. Since Plaintiffs' Counsel's requested fees amount to only 30.5% of the combined fund, the first and seventh *Gunter* factors support approval of the requested fee.

### 2. The Absence of Objections Weighs in Favor of the Requested Award.

Plaintiffs' Counsel have received no objection to their fee request as of this date. Consequently, the lack of objections by Settlement Class Members is further support of the reasonableness of the requested fee. "Such an absence favors awarding the requested fees without reduction." *Rossini*, 2020 WL 3481458, at *19 (quoting *Rouse v. Comcast Corp.*, No. 14-1115, 2015 WL 1725721, at *12 (E.D. Pa. Apr. 15, 2015)). Thus, the second *Gunter* factor favors approval of the requested fee. If Class Counsel receives any objections to their fee prior to the objection deadline, they will immediately inform the Court.

### 3. The Skill and Efficiency of the Attorneys Involved Weighs in Favor of the Requested Award.

As reflected in the accompanying declaration, Settlement Class Counsel have extensive experience in the area of complex class litigation, including product defect and mislabeling class actions. See Exhibit 1, Joint. Decl., at Ex. A (resumes of Class Counsel Martha Geer, Harper Segui, and Rachel Soffin). From initiating this action until reaching the proposed Settlement,

Class Counsel were continuously engaged in vigorous litigation against well-capitalized Defendants represented by sophisticated counsel. The Settlement was made possible by Class Counsel's extensive experience litigating class actions of similar size, scope, and complexity. Using their extensive experience and knowledge, Class Counsel litigated this case effectively and efficiently, with substantial fact and expert investigation, motion practice, discovery, and hard-fought, arms-length settlement negotiations. *Id.* at ¶ 14-28. This work allowed Class Counsel to achieve significant relief on behalf of the Settlement Class. Thus, the third *Gunter* factor favors approval of the requested fee.

### 4. The Complexity and Duration of the Litigation Weighs in Favor of the Requested Award.

Generally, "[c]ases requiring great expenditures of time, money, and other resources on behalf of the parties and the court" are "good candidates for settlement." *Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 2:18-cv-01007-NR, 2019 WL 5394751, at *9 (W.D. Pa. Oct. 22, 2019) (quoting *Deitz v. Budget Renovations & Roofing, Inc.*, No. 4:12-CV-0718, 2013 WL 2338496, at *5 (M.D. Pa. May 29, 2013)). That this action settled prior to contested class certification or trial represents a positive outcome for the Settlement Class, as it provides immediate and substantial relief for Settlement Class Members. *Kapolka*, 2019 WL 5394751, at * 9 ("[E]arly settlement of potentially costly litigation is commendable. Considerable judicial time and resources were no doubt conserved by the parties' resolution of this case before dispositive motions or trial.").

This litigation and the Settlement required a high degree of skill and experience given the complexity of the issues. Class Counsel employed their significant experience gained from litigating numerous class actions across the country, in both state and federal court, including defective product class actions, among others. Exhibit 1, Joint. Decl., at Ex. A (resumes of Class

Counsel Martha Geer, Harper Segui, and Rachel Soffin). As is typical with product defect and mislabeling class actions, the factual and legal claims at issue are highly complex. Prosecuting and settling this Action demanded considerable time and labor. Class Counsel performed research on All-Clad, its Cookware, the warranties, care, and consumer complaints. *Id.* at ¶¶ 9-11. Additionally, numerous consumers were interviewed, and documents collected to gather information about the Cookware, the alleged defect, and All-Clad's actions regarding the alleged defect and its knowledge of the same. *Id.* Further, Class Counsel worked closely with well-qualified materials and metallurgy experts who spent many hours investigating the Cookware, including research of the product, specifications, industry standards, and alternative feasible designs. *Id.* As part of the investigation, the engineers collectively performed dishwasher testing, microscopic analysis, and documented the Cookware materials and construction. *Id.* The engineers also provided ongoing assistance to Class Counsel during litigation, including formulation of discovery questions. *Id.* at ¶ 26. Class Counsel also conducted significant legal research to prepare well-pleaded complaints and amended complaints, briefed and argued Defendant's Motion to Transfer before the JPML, briefed two motions to dismiss and a motion to strike class allegations, engaged in discovery, reviewed and analyzed important documents and data from Defendant, attended multiple mediations, and engaged in several subsequent months of arm's-length negotiations between experienced class counsel. *Id.* at ¶¶ 9-28.

Absent this settlement, this action could have been litigated for several more years, delaying any relief to consumers. Although Class Counsel has engaged in substantial investigation and litigation, this case "is still far from trial ready. Thus, by negotiating an early settlement, Plaintiffs' counsel achieved a positive result for class members that avoided protracted litigation in which victory was far from certain." *Rossini*, 2020 WL 3481458, at *19; *see also Craig v. Rite*

*Aid Corp.*, No. 4:08-CV-2317, 2013 WL 84928, at *9 (M.D. Pa. Jan. 7, 2013) ("With respect to the likely duration of this litigation, counsel for the parties aver, and we have no reason to doubt, that even the most procedurally advanced of these consolidated cases would require additional and substantial discovery in order to place the case in a trial posture."). Thus, the fourth *Gunter* factor favors approval of the requested fee.

### 5. The Risk of Nonpayment Was Substantial.

Plaintiffs' Counsel brought this case on a fully contingent basis, investing time, effort, and money with no guarantee of payment. *Rossini*, 2020 WL 3481458, at *20) (citing *Brumley v. Camin Cargo Control, Inc.*, No. 08-1798, 2012 WL 1019337, at *11 (D.N.J. Mar. 26, 2012) ("The Court also finds that Plaintiffs' counsel risked non-payment during the period of their representation since they represented Plaintiffs entirely on a contingent basis[.] ... Given these considerations, the Court finds that the risk of non-payment weighs in favor of the requested fee.")); *Craig*, 2013 WL 84928, at *12 ("[W]e note that because Class Counsel accepted this case on a contingent fee basis, the risk of nonpayment was and remained substantial throughout."). Such a substantial risk of nonpayment in return for advancing all of the costs and fees weighs heavily in favor of finding Class Counsel's requested award reasonable.

The claims and defenses in this action are complex, requiring the retention of qualified experts to perform critical analyses regarding the alleged defect, as well as litigation of numerous different state laws in several jurisdictions, heightening the complexity of the factual and legal issues in this case. Plaintiffs faced the risk of losing at class certification or summary judgment, at trial, or on appeal in each of these cases. The risks and obstacles in this case are just as great as those in other product defect class actions and this case would likely have taken years to successfully prosecute, with the risk that there would be no recovery at all. There are few lawyers

willing to invest significant time and resources prosecuting a lawsuit that involves complicated and uncertain legal questions and a substantial risk of receiving no compensation, which is evidenced by the fact that, to Class Counsel's knowledge, no other related class actions were filed elsewhere in the United States. Although Class Counsel managed to achieve an excellent result for the Settlement Class, this outcome was anything but certain until shortly before the Settlement was reached. Thus, the fifth *Gunter* factor weighs in favor of approving the requested fee.

### 6. Class Counsel Have Devoted Substantial Time and Effort to this Action.

Class Counsel have devoted 1,954.20 attorney and paralegal hours to work associated with this action over a two-and-a-half year period. *Rossini*, 2020 WL 3481548, at *20 (finding 970.6 attorney and paralegal hours over a period of three years a "substantial expenditure of time and effort that weights in favor of a significant fee award, or at least a fee award consistent with the norm") (citing *Rouse v. Comcast Corp.*, No. 14-1115, 2015 WL 1725721, at *13 (concluding that "the time devoted to this case was significant" where counsel devoted 221.45 hours to case)). As discussed above, the Settlement is the product of hard-fought litigation and arm's-length negotiations, as well as substantial investigation and litigation, including:

(1) significant time communicating with Plaintiffs and other potential class members;

(2) investigation of facts and researching the law;

(3) the retention of knowledgeable and qualified experts who performed critical analyses regarding the alleged defect and damages at various stages of litigation, and who also assisted with discovery;

(4) the investigation, preparation, and filing of multiple actions by Plaintiffs, including in the Northern District of California, District of Massachusetts, the Southern District of Florida, and the Northern District of Georgia;

(5) participation in multiple case management conferences in the Northern District of California in the *Mears* Action;

(6) briefing Defendants' Motion for Transfer before the JPML and opposing Defendants' Motion to transfer before the JPML;

(7) fully briefing Defendants' Motion to Dismiss in the *Egidio* Action while the Motion to Transfer was pending;

(8) fully briefing an omnibus motion to dismiss and strike the class allegations in the *Mears*, *Montalvo*, and *Murray* Actions following transfer of this action by the JPML to this Court;

(9) negotiating and filing a Joint Motion for Protective Order, Proposed Rule 26(f) Discovery Plan, and Joint Motion for Discovery governing hard copy documents as well as ESI in order to continue engaging in discovery following transfer to this Court;

(10) significant fact discovery, which aided the resolution of this action, and included serving and responding to interrogatories and requests for production, third-party retailer discovery, and reviewing and analyzing important documents and data;

(11) filing multiple joint status reports with the Court;

(12) two days of mediation, on October 13-14, 2021, during which time the parties were unable to resolve this matter, resulting in continued litigation of this matter;

(13) further mediation following several additional months of litigation, on February 16, 2022, at which time the parties were able to successfully resolve the substantive terms of the Settlement Agreement; and

(14) continued negotiation of the remaining details of the Settlement Agreement for an additional five months.

Additional attorney time will be devoted to this case following the filing of this Memorandum, including preparing for the Motion for Final Approval, supervising aspects of the administration of the Settlement, answering Settlement Class Member questions, and helping resolve any issues that arise. "This incredible time commitment alone, notwithstanding any other fact, weighs in favor of the requested fee award." *Craig*, 2013 WL 84928, at *12. Thus, the sixth *Gunter* factor weighs in favor of the requested fee award.

### 7. Value of Benefits Attributable to Class Counsel Relative to Other Groups.

"The first *Prudential* factor is typically relevant in cases where a class-action lawsuit follows an investigation by a government agency or other third-party who, in effect, did some portion of counsel's work for them." *Rossini*, 2020 WL 3481548, at *20. Here, all benefits obtained on behalf of the Settlement Class can be attributed to the efforts of Class Counsel, and not of any government agency or third-party. Class Counsel engaged in all of the work described above independently and without the assistance of any third-parties. Thus, this factor favors approval of class counsel's fees without any reduction to the fee award to account for work done by "other groups." *Id.*

### 8. The Requested Fees Fall within the Percentage Fee if Subject to Private Fee Agreement.

In private contingency fee cases, "plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery." *Rossini*, 2020 WL 3481548, at *20 (citing *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000)); *see Craig*, 2013 WL 84928, at *12 (M.D. Pa. Jan. 7, 2013) ("In this region, '[a]ttorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation' and thus we have no trouble finding that an award of thirty-two percent (32%) less expenses, which

falls at the low end of that range, is consistent with market rates.").  A percentage award of 30.5% falls in the middle of this range.  As a result, the second *Prudential* factor favors approval of Class Counsel's fees.

### 9.  Innovative Terms of the Settlement Warrant the Requested Fees.

While there are no unusual terms to this Settlement, it does provide an innovative relief, allowing Class Members multiple options for relief to choose the one that best suits their needs.

### D.  A Lodestar Cross-Check Further Supports the Reasonableness of the Requested Fee Award.

"Courts in this District are encouraged to "cross-check" the reasonableness of percentage fee awards against the lodestar method." *Rossini*, 2022 WL 132087, at *12 (citing *Rite Aid Corp. Sec. Litig.,* 396 F.3d at 305-306).  "The lodestar cross-check need entail neither mathematical precision nor bean counting but instead is determined by considering the unique circumstances of each case." *In re Rite Aid Corp*, 396 F.3d at 306 (explaining that, when performing a "cross-check" of a percentage fee award, an "abridged lodestar analysis" is appropriate). Instead, the Court "should be satisfied with a summary of the hours expended by all counsel at various stages with less detailed breakdown than would be required" to perform a full lodestar analysis. *Kapolka,* 2019 WL 5394751, at *11 (citing *In re Rite Aid Corp*, 396 F.3d at 307 n. 16 (quoting *Report of the Third Circuit Task Force, Selection of Class Counsel*, 208 F.R.D. 340, 423 (2002))).  Further, the Court "does not have to 'review actual billing records' but can 'rel[y] on summaries submitted by the attorneys.'" *Kapolka,* 2019 WL 5394751, at *11 (quoting *Young v. Tri Cty. Sec. Agency, Inc.*, No. CIV.A. 13-5971, 2014 WL 1806881, at *10 (E.D. Pa. May 7, 2014)).

"When conducting a "lodestar" analysis, the Court first calculates a "lodestar" by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services

provided, and the experience of the attorneys." *Kapolka,* 2019 WL 5394751, at *11 (citing *In re Rite Aid Corp*, 396 F.3d at 305 (internal quotations omitted)). "Then, the Court must multiply the lodestar calculation to reflect the risks of nonrecovery, to reward an extraordinary result, or to encourage counsel to undertake socially useful litigation." *Kapolka,* 2019 WL 5394751, at *11, (quoting *Rouse*, 2015 WL 1725721, at *14 (internal citations omitted)). "Finally, the result is compared to the proposed percentage fee award to confirm the reasonableness of that award." *Kapolka,* 2019 WL 5394751, at *11 (internal citations omitted).

In cases where fees are calculated using the lodestar method, counsel may be entitled to a multiplier to reward them for taking on risk and high-quality work. *Rouse*, 2015 WL 1725721, at *14 (finding the Court may "multiply the lodestar calculation to reflect the risks of nonrecovery, to reward an extraordinary result, or to encourage counsel to undertake socially useful litigation."). Lodestar multipliers ranging from one to four are regularly awarded in common fund cases when a lodestar crosscheck is conducted. *Kapolka,* 2019 WL 5394751, at *12 (collecting cases with lodestar multipliers ranging from 2.08 to 5.30) (citing *In re Prudential Ins. Co.*, 148 F.3d at 341). *See also Mirakay*, 2014 WL 5358987, at *14 ("Given that the Third Circuit has noted that [m]ultipliers ranging from one to four are frequently awarded in common fund cases where the lodestar method is applied and in fact the Third Circuit approved a lodestar multiplier of 2.99 in a case it described as relatively simple in terms of proof in which discovery was virtually nonexistent, a 2.45 multiplier here is well within the range of reasonableness.") (cleaned up).

Here, Plaintiffs' counsel has provided a declaration listing the attorneys and staff who billed time here, along with each team member's position, years of experience, hourly rate, and total hours billed, showing a lodestar of $1,214,912.50. *See* Exhibit 1, Joint Decl. at ¶ 32.

"The Third Circuit has used the Laffey Matrix to determine appropriate hourly billing rates." *Edmonds v. Capital Accounts, LLC*, 2020 WL 550611, at *3 (E.D. Pa. Feb. 4, 2020) (citing *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 708 (3d Cir. 2005)). Class Counsel in this action have also recently received approval of their fees using the Laffey Matrix in product defect class actions. *See In Re: Allura Fiber Cement Siding Litigation*, No. 1:19-mn-02886- DCN, 2021 WL 2043531, at * 6 (May 21, 2021 D.S.C.) (approving petition for *billers in this litigation* (Harper Segui and Rachel Soffin) where the fees were based on a 33% of a common fund with a lodestar crosscheck based on adjusted Laffey Matrix rates of up to $894/hour, and further noting, "Class Counsel's hourly rates are conservatively based on adjusted Laffey Matrix rates, which are comparable to those rates charged in South Carolina, despite the fact that this case is national in scope and required construction and product defect class action specialists from across the country who typically charge higher rates."); *Cleveland v. Whirlpool Corp.*, No. 0:20-cv-01906-WMM-JFD, 2022 WL 2256353, at *10 (D. Minn. June 23, 2022) (approving class counsel's motion for fees, using a lodestar crosscheck where fees were based on adjusted Laffey Matrix rates, stating "[a]s detailed in Plaintiffs' motion and supporting declaration from Class Counsel, the total lodestar … is similar to hourly rates approved by other courts. Class Counsel billed their time at their current billing rates charged to their clients, and the record reflects that the hours expended were necessary to secure the results obtained." (citing *Cleveland v. Whirlpool Corp.*, No. 0:20-cv-01906-WMM-JFD (Feb. 24, 2022), ECF No. 80 at 25-27 and 80-1 (Memorandum of Law in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Litigation Costs and Service Awards and Declaration in Support)).

Generally, these rates are in line with national surveys including National Association of Legal Fee Analysis ("NALFA") 2020 Litigation Hourly Rate Range Growth Matrix

(https://www.law.com/nationallawjournal/almID/1202636785489/?slreturn=20211009144901

and the Laffey Matrix (http://www.laffeymatrix.com/see.html).

https://www.law.com/nationallawjournal/almID/1202636785489/?slreturn=20211009144901 *See also* National Law Journal's 2014 Billing Survey, noting the top billing firms in the Chicago area were billing up to $1,130/hour for partners and up to $925.00/hour for associates.  These rates are also consistent with hourly rates found reasonable in the Third Circuit. *See Khona v. Subaru of America*, No. 19-9323, 2021 WL 4894929, at *1 (D.N.J. Oct. 21, 2021) ("Here, Class Counsel spent approximately 1219 hours on this matter, at rates that ranged between $225 per hour for a paralegal and $850 per hour for a partner. . . .The Court notes that those hourly rates are reasonable here."); *Li v. Aeterna Zenaris, Inc.*, Civil No. 14-7081 (TJB) (D.N.J. June 1, 2021) (approving rates of up to $970 per hour)); *Mirakay*, 2014 WL 5358987, at *14 (approving rates of $350 to $850 per hour).

Class Counsel conservatively billed their time at their rates charged to their clients at the inception of this Litigation (April 16, 2020), and all of the billable time was necessary to secure the results obtained. As detailed in the attached declaration of Class Counsel, the total lodestar is $1,214,193 which yields a 1.59 multiplier for the requested $1,927,694.04 fee.  *See* Exhibit 1, Joint Declaration, at ¶ 33.

### E.  Class Counsel Are Entitled to Be Reimbursed for Their Reasonable Litigation Expenses.

"[C]ounsel in common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case." *Kapolka*, 2019 WL 5394751, at *12 (quoting *In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 226 (E.D. Pa. 2014)); *Yong Soon Oh v. AT & T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) (approving reimbursement of costs including (1) "travel and lodging," (2) "local meetings

and transportation," (3) "depositions," (4) "photocopies," (5) "messengers and express services," (6) "telephone and fax," (7) "Lexis/Westlaw legal research," (8) "filing, court and witness fees," (9) "overtime and temp work," (10) "postage," and (11) "the cost of hiring a mediator"). As shown in the attached declaration, Class Counsel's expenses are $59,805.56, and were appropriately incurred in the prosecution of this case.

### F. The Class Representatives Are Entitled to a Service Award.

"Courts have ample authority to award incentive or 'service' payments to particular class members where the individual provided a benefit to the class or incurred risks during the course of litigation." *Kapolka*, 2019 WL 5394751, at *13 (citing *Bredbenner v. Liberty Travel, Inc.*, No. CIV.A. 09-1248 MF, 2011 WL 1344745, at *23 (D.N.J. Apr. 8, 2011)).

The requested Service Awards of $2,500.00 to each Class Representative are well within, if not lower than, the range of awards found reasonable by courts in the Third Circuit. *Rossini*, 2020 WL 3482458, at *9 (approving service award of $10,000 to the named plaintiffs "given the assistance they rendered to their counsel, and inline with those awarded in other class-action lawsuits" (citing *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 259 (D.N.J. 2005) ("Their request for a $10,000 incentive award is reasonable[.]")); *In re Residential Doors Antitrust Litig.*, No. 94-3744, 1998 WL 151804, at *11 (E.D. Pa. Apr. 2, 1998) (approving $10,000.00 incentive award); *In re Linerboard Antitrust Litig.*, No. 98-5055, 2004 WL 1221350, at *19 (E.D. Pa. June 2, 2004) (approving $25,000.00 incentive award); *Kapolka*, 2019 WL 5394751, at *13 (collecting cases where approved service awards ranged from $5,000.00 to $12,500.00).

Here, Plaintiffs have devoted time in the oversight of, and participation in, the litigation on behalf of the Class. Plaintiffs gathered documents and communicated information to Class

Counsel, reviewed pleadings, and maintained regular contact with Class Counsel regarding the status of the action. Exhibit 1, Joint Decl., at ¶ 31. As a result of their efforts, a substantial benefit was conferred on the Settlement Class. Accordingly, and in recognition of the substantial benefit they conferred on the Settlement Class and their efforts generally, modest Service Awards of $2,500 to Representative Plaintiffs are appropriate.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Honorable Court grant the Motion for Award of Attorneys' Fees, Litigation Costs and Service Awards. For judicial efficiency, Plaintiffs request that the Order on this motion be consolidated with an Order on Plaintiffs' forthcoming motion for final approval of the class settlement, for which Class Counsel will provide a detailed proposed final order.


DATED:  October 24, 2022

Respectfully submitted,

*/s/* Rachel Soffin
Rachel Soffin*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: (865) 247-0080
rsoffin@milberg.com

Harper T. Segui*
Martha Geer*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
900 W. Morgan Street
Raleigh, NC 27603
T: (919) 600-5000
F: (919) 600-5035
hsegui@milberg.com
mgeer@milberg.com

*Counsel for Plaintiffs*

*Admitted pro hac vice.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of October 2022, a true and correct copy of the foregoing was served upon counsel of record via the Court's Electronic Case Filing system.

/s/ Rachel Soffin
Rachel Soffin

.