IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ALL-CLAD METALCRAFTERS, LLC, COOKWARE MARKETING AND SALES PRACTICES LITIGATION<br><br>This Document Relates to All Actions | MDL No. 2988<br>Master Case No. 2:21-mc-491-NR<br><br>ELECTRONICALLY FILED |

## JOHN MICHAEL ANDREN'S RESPONSE TO JOINT NOTICE OF FILING STATUS OF CLAIMS PROCESS

Adam E. Schulman (admitted *pro hac vice*)
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1629 K Street NW, Suite 300
Washington, DC 20006
Phone: (610) 457-0856
Email: adam.schulman@hlli.org

*Attorney for Objector John Michael Andren*

**Introduction**

This Court delayed the release of a substantial portion of class counsel's fee request until after the claims process so it could adjudge the veracity of class counsel's claims that the final claims numbers (*i.e.,* the class relief) would justify their requested lodestar multiplier. But now class counsel seeks release of the holdback merely because the claims process is nearing closure. But without *any* information about final claims numbers, objective observers are left wondering to what extent the claims process succeeded—and whether class counsel's "conservative" estimates were genuine or self-serving. To ensure the settlement and award of attorneys' fees have not trespassed beyond the limits imposed by Rule 23, and to ensure that class members remain the "foremost beneficiaries of the settlement,"[1] Andren asks this Court for three things: (1) to deny the release of the holdback at this time; (2) require the parties to file an actual accounting of the final, or near final, claims numbers; and (3) should payment of the held back funds to class counsel not be warranted given the accounting of class relief, consider whether there are any viable methods to use the funds to the class's benefit rather than allowing them to revert to All-Clad.

**Argument**

Plaintiffs ask this Court to release the $503,025.43 in attorneys' fees that it deferred pending an accounting of the final claims administration process. Dkt. 106. But they don't provide an accounting at all; they merely offer the generic statement that the "claims process is substantially complete" and announce that there are "less than 300 claims to move to completion." Dkt. 106-2 ¶ 9.

At the fairness hearing, class counsel assured this Court that, using the "most conservative" projection of a 50% reduction from the submitted claims, the validated claims for $75 payments would exhaust the fund. Transcript, Dkt. 105 at 16:21-17:6. That was a continuation of assertions that plaintiffs had made in the papers before the fairness hearing. *See* Dkt. 92 at 18, 33. Andren has been skeptical all along. *See* Transcript at 44:18-45:23; Dkt. 96 at 3. But plaintiffs had assured the Court that

---

[1] *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 179 (3d Cir. 2013).

Andren's projections are "fictitious" and the "reality" is that 50% validation projection is "conservative." Dkt. 94 at 7-9.

When this Court approved the settlement, it relied on the fact that the parties had declared receipt of over 123,000 claims. Final Approval Opinion, Dkt. 103 at 12. The parties' representations made the Court "confident" in the administration process. Transcript at 55:10. The Court relied on the parties' representations that "the claims-resolution process is straightforward with appropriate dispute resolution safeguards in place," and noted that even if "one-third of the current Option A1 claims are disallowed, that would still signify a strong claims rate." Dkt 103 at 19. To "partially address[] Mr. Andren's objection," however, the Court deferred awarding about $500,000 in attorneys' fees "until the 'claims process is complete.'" Final Approval Opinion at 24.  The Court specifically tied this deferral to a review of the outcome of the claims administration. Final Approval Opinion at 18. Andren had suggested this as an alternative in his objection, so that the Court could properly calibrate and tie fees to the "actual benefit conferred on the class." Dkt. 86 at 20. And the Third Circuit too suggests that point of deferring a portion of the fee award is to "overcome the speculative nature of the tentative and imprecise settlement valuations." *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 334 (3d Cir. 1998) (cited by Final Approval Opinion at 25).

Andren has only grown more skeptical of the settlement's actual class benefit through his own experience navigating the cumbersome administration process. As Andren describes in his accompanying declaration, after settlement approval, the administrator demanded that Andren resubmit photographic evidence of sharp edges before approving his claim. Second Andren Decl. ¶ 5. After resubmitting the same photographic evidence, his claim was then provisionally approved. *Id.* ¶¶ 5, 7. But that communication stated that he would receive a separate communication providing a shipping label to return his cookware for final inspection and claim approval. *Id.* ¶ 7. After a few months without update, however, Andren received a "Final Notice" that he needed to submit his cookware then or risk missing out on relief. *Id.* ¶ 9. Only then, contemporaneous with the "Final Notice" did Andren receive the separate communication providing his UPS shipping label. *Id.* Then,

Andren Response in Opposition
Case No. 2:21-mc-491-NR                                         2

although All-Clad paid for the shipping costs itself, to comply with the parties' packing requirements for the returned cookware (corrugated cardboard packaging with filling), Andren was required to spend about $20 out of pocket. *Id.* ¶ 10. Separately, during the administration period, Andren also received an unsigned email from a "john doe" account titled "All clad claims validation." *Id.* ¶ 8. That email attached screenshots complaining about the obstacles class members were encountering in the claims administration process. *See* Exhibit A to Second Andren Decl. And now, lastly, plaintiffs have submitted a notice that speaks volumes in its refusal to reveal actual payout numbers. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2212 (2021) (discussing the adverse inference principle). Andren fears that even the attorneys' fees awarded to date—$1.437m—already outstrip the class's cognizable settlement benefit.[2]

Andren asks the Court to take these steps. (1) deny the release of the $503,025.43 in held back attorneys' fees; (2) require the parties to file an actual accounting of claims numbers, submitted and paid out, broken down by the type of claim;[3] and (3) consider whether there are any viable methods to use the $500,000 excess in negotiated attorneys' fees to benefit the class and avoid enriching All-Clad, especially given All-Clad's apparently erroneous representations about the ease of the claims process. If the Court cannot reopen the final judgment *sua sponte*, Andren stands willing to move for that relief. *See Ocean City Costa Rica Inv. Group, LLC v. Camaronal Dev. Group, LLC*, 571 Fed. Appx. 122, 127 (3d Cir. 2014) (Ambro, J.) (cataloging open circuit split on propriety of *sua sponte* reopening). Andren also observes that the plaintiffs may be attempting to foreclose that reopening option by filing

---

[2] Andren is confused by the statement in Plaintiffs' Joint Notice that the Court held back $503,025,43 from the award of $1.437m. As far as Andren is aware, the hold back was on top of the $1.437m award. *See* Dkt. 174 ¶¶ 5-6.

[3] This accounting should be at least as detailed as the Post-Distribution Accounting required in the Northern District of California under its Procedural Guidance, *available at* https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/. It will have the salutary effect of reducing the transparency deficit in class action administration. *See* Amanda M. Rose, *Classaction.gov*, 88 U. CHI. L. REV. 487, 494-97 (2021) (describing the transparency problem created by, among other things, the lack of distribution data).

their Joint Notice more than one year after this Court's order granting final approval. *See* Fed. R. Civ. P. 60(c)(1).

In any event, it remains true that the simple denial of the fee request is a "half solution." Transcript at 45:13-14. Recent Third Circuit law suggests that full solution is the elimination of the fee reversion. *In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712, 726-27 (3d Cir. 2023). It is not too late for All-Clad and Class Counsel to renounce their interest in the excess fees, and use that sum of money to benefit the class. It would be a "welcome change." *Id.*

Dated:  February 27, 2024                                         Respectfully submitted,

                                                                  */s/ Adam E. Schulman*
                                                                  Adam E. Schulman (admitted *pro hac vice*)
                                                                  HAMILTON LINCOLN LAW INSTITUTE
                                                                  CENTER FOR CLASS ACTION FAIRNESS
                                                                  1629 K Street NW, Suite 300
                                                                  Washington, DC 20006
                                                                  Telephone: (610) 457-0856
                                                                  Email:  adam.schulman@hlli.org

                                                                  *Attorney for Objector John Michael Andren*

## CERTIFICATE OF SERVICE

I certify that I have filed the foregoing Response in Opposition through the Court's ECF system, which has effectuated service of this motion upon all attorneys in this case who are registered for electronic filing.

Dated: February 27, 2024                                        */s/ Adam E. Schulman*
                                                                                Adam E. Schulman (admitted *pro hac vice*)